Argued and submitted July 25, 1984, motion to dismiss appeal denied in part, reversed and remanded on appeal; affirmed on cross-appeal February 27, reconsideration denied May 24, petition for review denied June 18, 1985 (299 Or 313)

BOURGEOIS et al,
*Appellants - Cross-Respondents,*

*v.*

GRENFELL et al,
*Respondents - Cross-Appellants.*

(T52345; CA A29140)

695 P2d 974

Don Leadroot, Forest Grove, argued the cause for appellants - cross-respondents. With him on the briefs was Robert Andrew Browning, Forest Grove.

Fred A. Granata, Portland, argued the cause for respondents - cross-appellants. With him on the brief were Dressler & Granata, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiffs appeal a judgment that denied their petition to sell defendant Gibsons' real property (the property) on execution and that ordered the property discharged from the lien of plaintiffs' judgment against defendants Grenfell. Defendants Mrs. Grenfell and the Gibsons cross-appeal the denial of attorney fees. On the appeal, we dismiss as to Charles Gibson and otherwise reverse and remand; on the cross-appeal, we affirm.

Defendants Mrs. Grenfell and the Gibsons move to dismiss the entire appeal on the grounds that plaintiffs did not serve Charles Gibson with the notice of appeal, ORS 19.023(2)(a), that the notice of appeal fails to name him as an adverse party, ORS 19.029(1)(c), and that those defects are jurisdictional. ORS 19.033(2). All of those defendants "appeared in the action." ORS 19.023(2)(a). Because plaintiffs did not name Charles Gibson in their notice of appeal, they did not perfect the appeal as to him. Plaintiffs, however, served the notice of appeal on the attorney who was the attorney of record for Charles Gibson as well as the respondents who were named in it. *See* ORS 19.104; ORCP 9B. Plaintiffs' service of their notice of appeal on that attorney constituted sufficient *service* on Charles Gibson. Plaintiffs' failure to *name* Charles Gibson as an adverse party in the notice of appeal is not jurisdictional as to the other respondents and did not prejudice any substantial interest of any party or the court. *See McQuary v. Bel Air Convalescent Home, Inc.,* 296 Or 653, 657, 678 P2d 1222 (1984); *see also Jacobson v. Mt. Park Home Owners Assn.,* 65 Or App 269, 670 P2d 633 (1983), *rev den* 296 Or 253 (1984); *Northern Insurance Co. v. Conn Organ,* 40 Or App 785, 596 P2d 605, *rev den* 287 Or 507 (1979). We dismiss the appeal as to Charles Gibson only. We turn to the merits.

In 1976, plaintiffs took judgment for approximately $39,000 against the Grenfells, who then owned and occupied the property as their actual abode. On December 14, 1977, the Grenfells each filed petitions in bankruptcy in the United States District Court for Oregon. They listed plaintiffs as creditors and the judgment as a debt. In March 1978 that court discharged the Grenfells from the debt but did not discharge the judgment lien. Later that year the Grenfells were divorced.

The dissolution decree awarded the property to Mrs. Grenfell, who continued to live in it until she sold it to Mrs. Gibson on May 6, 1981. Thereafter, none of the defendants occupied the property. Although defendants assert that, in February 1983, Charles Gibson acquired an interest in the property as a tenant by the entirety with his wife, the record contains no evidence of this. On May 6, 1981, and at the time of the trial in June 1983, the value of the property was approximately $51,000.

In April 1983 plaintiffs petitioned to sell the property on execution to satisfy the judgment against the Grenfells. ORS 23.445. They alleged that their judgment then exceeded $61,000, including interest, and, but for a lien of approximately $1,800 for child support in favor of Mrs. Grenfell, was prior to all other liens. They also alleged that the property was not a homestead.

Mrs. Gibson's answer, filed on May 2, 1983, alleged that when the Grenfells filed their bankruptcy petition on December 14, 1977, the property was the Grenfells' homestead, that their interest above the first mortgage did not then exceed $12,000 and that presently it was the homestead of one or both of the Grenfells. As a counterclaim, the Gibsons gave notice of their intent to effect the discharge of the property from the judgment and applied for an order of discharge. ORS 23.280. At trial Mrs. Grenfell joined in the answer and notice. Plaintiffs objected to the notice, requested a hearing and alleged that "the defendants are not entitled to a homestead exemption in the residence." *See* ORS 23.290.

After trial, without a jury, the court found:

"That the applicable valuation date for determining whether there is any excess leviable interest in the subject property is the date [December 14, 1977] of the petition in bankruptcy pursuant to ORS 23.240(4) and ORS 23.280 as amended by the 1981 Legislature, and that as of the date of the petition in bankruptcy there was no excess leviable interest in the subject property."[1]

---

[1] On December 14, 1977, the property's value was $34,000. The mortgage balance was $22,000. The Grenfells' equity was $12,000, an amount equal to their homestead exemption. There was then no excess "leviable interest" available to satisfy plaintiffs' judgment. The property's value on May 6, 1981, when Mrs. Grenfell conveyed to Gibson, and when plaintiffs commenced this action in 1983, was at least $51,000.

It denied relief to plaintiffs and discharged the property from their judgment but also denied any attorney fees to defendants.

■■ The court's judgment rests on the assumptions that the existence of a homestead on the property on December 14, 1977, and the absence then of an "excess leviable interest" are decisive. Plaintiffs assign as errors that the court (1) fixed December 14, 1977, the date of the Grenfells' petition in bankruptcy, as the date on which to determine if there is an excess leviable interest in the property and (2) found that there was a homestead exemption on May 2, 1983, the date on which defendants gave their notice under ORS 23.280.[2]

ORS 23.240 provides that a homestead exemption

"(1) * * * shall not be impaired by:

"(a) Temporary removal or temporary absence with the intention to reoccupy the same as a homestead;

"(b) Removal or absence from the property; or

"(c) The sale of the property.

"* * * * *

"(3) The exemption period under paragraphs (b) and (c) of subsection (1) of this section shall be one year from the removal, absence or sale, whichever occurs first."[3]

The Gibsons claim that the Grenfells' homestead benefits them. On May 6, 1981, the date of transfer, Mrs. Grenfell's homestead in the property still existed. It survived, however, for not more than one year thereafter. ORS 23.240(3). The Gibsons never lived on the property. In April 1983, when plaintiffs filed their petition, the Grenfells' homestead no longer existed and could not then benefit either the Grenfells

---

[2] Plaintiffs' second assignment of error states:

"The Court erred in finding that there is a homestead exemption when the property is in the hands of a transferee who purchased the property from a homestead owner more than one year prior to the transferee's Notice of Intent to Discharge a Lien."

[3] ORS 23.240 was amended in 1981, after Mrs. Grenfell transferred the property to Gibson. Or Laws 1981, ch 840 and ch 903. Other than raising the amount of the homestead exemption, the 1981 amendments made no significant change in ORS 23.240(1), (2) and (3), except to add in subsection (1) the sentence:

"The exemption shall be effective without the necessity of a claim thereof by the judgment debtor."

or the Gibsons. Whether there is an excess "leviable interest" is pertinent only if a homestead exists on the date of the creditor's petition under ORS 23.445. A leviable interest above the amount of an existing homestead is a threshold requirement for the creditor's right to sell the property on execution.[4] Because no homestead existed on the date of plaintiffs' petition, the trial court's findings respecting "excess leviable interest" on December 14, 1977, are irrelevant. Because the evidence here otherwise supports plaintiffs' petition, the court erred when it denied the petition.

■ Furthermore, the court erred in granting defendants a discharge of the property from plaintiffs' judgment lien pursuant to ORS 23.280-.300. That ruling also erroneously assumed that the homestead exemption that existed on December 14, 1977, the date of the petitions in bankruptcy, still protected the property. A judgment debtor or her transferee, however, may not obtain a discharge under ORS 23.280-.300 unless a homestead exists on the date of the notice of intent to discharge.[5] Were it otherwise, then defendants

---

[4] ORS 23.445 and ORS 23.240 provide a procedure to determine whether a creditor's sale may proceed if a homestead exists. The judgment creditor must "allege facts showing that [the property] may nevertheless be sold on execution." ORS 23.445(3)(d); *see* ORS 23.240(1). Those facts include that the value of the property exceeds the amount of the homestead exemption that ORS 23.240(1) sets. ORS 23.240(4) fixes the date on which to determine the value of the property and the homestead amount "for the purpose of determining a leviable interest in excess of the homestead exemption." In April 1983 when plaintiffs petitioned under ORS 23.445, and on May 2, 1983, when defendants gave notice under ORS 23.280, ORS 23.240(4) provided:

"When the owner of a homestead has been granted a discharge in bankruptcy or has conveyed the homestead property, the value thereof, for the purpose of determining a leviable interest in excess of the homestead exemption, shall be the value on the date of the petition in bankruptcy, whether the value is determined in the bankruptcy proceedings or not, or on the date the conveyance becomes effective, whichever shall first occur. However, with respect to judgments not discharged in bankruptcy, or entered against the owner after discharge, the value on the effective date of conveyance shall be controlling."

Defendants assert in their brief that the 1981 amendments apply. We agree. Previously, ORS 23.240(4), provided:

"When the owner of a homestead has been adjudicated bankrupt or has conveyed the homestead property, the value thereof, for the purpose of determining a leviable interest in excess of the homestead exemption, shall be the value on the date of the petition in bankruptcy, or on the date the conveyance becomes effective, whichever shall first occur."

[5] Although ORS 23.280 authorizes defendants to file the notice of intent to discharge "at any time," if a homestead exemption "exists" at the time of the

could force plaintiffs to accept for their judgment the value of the property less senior encumbrances, even though another judgment creditor could sell the property subject to his judgment lien at execution sale and, if there were no higher bids, purchase it for the amount of his judgment. *See Credit Service Co. v. Cameron,* 41 Or App 57, 597 P2d 363 (1979). The legislature did not intend to place a person who previously held a homestead, but no longer does, in a position superior to that of a person who has never held a homestead.[6] Moreover, our conclusions under ORS 23.280 and ORS 23.445 are harmonious. Unless a homestead exists, a judgment debtor or his transferee is entitled neither to utilize the discharge procedure under ORS 23.280 nor to obtain protection, to the extent of a homestead's value, from a judgment creditor's petition under ORS 23.445.

The trial court denied attorney fees to the Gibsons. Because of our disposition of this case, the Gibsons are not entitled to attorney fees. We affirm on the cross-appeal.

Motion to dismiss appeal denied except as to Charles Gibson; otherwise reversed and remanded on the appeal; affirmed on the cross-appeal.

---

agreement to transfer, the court may not grant a discharge under ORS 23.280-.300 to an owner or transferee if the homestead does not exist at the time of the notice. We note that the 1981 amendments to ORS 23.280(1) changed the words "At any time after the date of execution of an agreement to transfer the ownership of property in which a homestead exemption *is claimed* pursuant to ORS 23.240 * * *" to "At any time after the date of execution of an agreement to transfer the ownership of property in which a homestead exemption *exists* pursuant to ORS 23.240 * * *." (Emphasis supplied.)

[6] Other provisions of ORS 23.280-.300 support this conclusion. To obtain a discharge, the homestead owner or her transferee must deposit the difference between the value of the property and the sum of the senior encumbrances plus "$15,000 or $20,000, whichever amount of the homestead exemption is applicable under ORS 23.240(1)." The statute, however, does not contemplate a discharge if the amount of the homestead exemption is zero. Moreover, the judgment creditor may admit "the validity of the homestead exemption and object to the valuation of the property" or he may object "to other than the valuation of the property," ORS 23.290(2)(a), as plaintiffs did here when they objected that no homestead existed. The court then tries "the issues of fact and law in the manner of a quiet title suit and may direct the filing of formal pleadings as it considers necessary for definition of issues." ORS 23.290(2)(b). If the court decides against the judgment creditor, it orders the property discharged from the judgment lien. The statute provides, however, that "in all other cases," the court has to dismiss the application for the order of discharge "and the lien upon the property shall not be affected by the notice." ORS 23.290(3). The words "in all other cases" include the circumstance where the evidence shows that no homestead exemption exists on the date of the notice.