Argued and submitted February 15, judgment entered May 20, 1988, vacated; other-
wise affirmed August 9, reconsideration denied September 29, petition for review
denied November 30, 1989 (308 Or 592)

**GRANT COUNTY FEDERAL CREDIT UNION,**
*Respondent,*

*v.*

**HATCH et ux,**
*Appellants,*

*and*

**MONTGOMERY WARD & CO., INC., et al,**
*Defendants,*

**HATCH et ux,**
*Third-Party Plaintiffs - Appellants,*

*v.*

**OREGON DEPARTMENT OF VETERANS' AFFAIRS,**
*Third-Party Defendant - Respondent.*

(87C-11064; CA A47951)

777 P2d 1388

James M. Brown, Salem, argued the cause for appellants. With him on the brief was Enfield, Guimond & Brown, Salem.

Ronald L. Marceau, Bend, argued the cause for respondent Grant County Federal Credit Union. With him on the brief were Martin E. Hansen and Marceau, Karnopp, Petersen, Noteboom & Hubel, Bend.

Meg Reeves, Assistant Attorney General, Salem, argued the cause for respondent Oregon Department of Veterans' Affairs. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this foreclosure proceeding, defendants[1] appeal, assigning error to the trial court's granting summary judgments to plaintiff Grant County Federal Credit Union and to third-party defendant Department of Veterans' Affairs (DVA).[2]

Defendants borrowed funds from DVA for the purchase of a farm and home and executed a promissory note secured by a mortgage on the property. They became delinquent in their payments and, on November 13, 1986, DVA notified them that, if they did not bring the loan current by February 13, 1987, the loan balance would be accelerated. Defendants did not cure the default, and DVA accelerated the balance. On April 24, 1987, it assigned the note and mortgage to plaintiff, which filed this action to foreclose the mortgage. Defendants did not deny that they were in default, but alleged as affirmative defenses that (1) ORS 407.095 precludes foreclosure and (2) DVA had no authority to assign the note and mortgage to plaintiff. Defendants also filed a third-party complaint against DVA, claiming that it had breached the loan agreement by assigning the note and mortgage to plaintiff. DVA counterclaimed, seeking a declaration that it had authority to assign the note and mortgage.

The trial court granted summary judgments in favor of plaintiff, permitting it to foreclose, and in favor of DVA on defendants' third-party breach of contract claim and on DVA's counterclaim. On January 21, 1988, it entered an ORCP 67B judgment on DVA's counterclaim, declaring that DVA had authority to assign the note and mortgage. On March 11, 1988, it entered an ORCP 67B judgment for plaintiff in the foreclosure action, and on April 18, 1988, it entered a judgment for DVA in the third-party action. Defendants have not appealed from the judgment entered on DVA's counterclaim.[3]

---

[1] We refer to defendants - third-party plaintiffs as defendants.

[2] Defendants filed separate notices of appeal against plaintiff and DVA; they are consolidated on appeal.

[3] The reason stated by defendants for not appealing from that judgment is that "no relief was specifically awarded against [defendants] and this appeal is complicated enough already."

Defendants have appealed from the judgment entered against them on their third-party claim against DVA. They assign error to the granting of DVA's motion for summary judgment, arguing, first, that DVA breached the loan agreement in assigning the mortgage. They have not appealed the judgment on DVA's counterclaim, and, therefore, we do not consider the assignment of that issue, because the unappealed final determination of the trial court on the counterclaim resolves the same question against defendants.

■■    The only issue remaining is whether DVA had, and has breached, a duty to avoid foreclosure. ORS 407.095 provides:

"(1)   It is the policy of the State of Oregon to make every reasonable attempt to keep a veteran in the home purchased under the loan program when the veteran is unable to make required loan payments because of illness, injury, death, involuntary job loss or economic stress due to factors beyond individual control. The director, by rule, shall implement such state policy. Rules adopted by the director under this section:

"(a)   May provide for a temporary reduction of loan payments.

"(b)   May provide for any other solution jointly agreed to by the borrower and the director.

"(c)   Shall provide for repayment of the amount of any loan payments reduced under the rules in accordance with terms and conditions agreed upon by the borrower and the director.   .

"(2)   In reducing loan payments under this section, the director must consider the effect of such reduction on the solvency of the program as a whole, on estimates of the most probable financial position of the program for one or more future periods, the condition of the tax exempt bond market, and the effect on other borrowers in the program."

Defendants contend that that provision, incorporated by reference in the loan agreement, imposes a *contractual* duty on DVA to avoid foreclosure and that DVA breached that duty when it assigned the note and mortgage to plaintiff, even though the assignment was made after the loan had been accelerated. That assignment, however, did not alter defendants' rights under the note and mortgage, because the assignee is bound by the constitutional provision, statutes and

administrative rules that are incorporated by reference in the mortgage.

As the statute requires, the director has adopted rules to implement the loan payment reduction program. OAR 274-20-386 provides for a temporary reduction of payments when a veteran is unable to pay because of illness, injury, death, involuntary job loss or economic stress due to factors beyond the veteran's control. It provides that such a temporary reduction is a benefit to be extended only in an extreme emergency and is not to be abused and that the maximum number of borrowers that can participate in the program is approximately one percent of the total outstanding borrowers.

DVA has thereby implemented the policy expressed in ORS 407.095 by providing for a program of reduced monthly payments under certain conditions. Defendants argue that, notwithstanding the existence of the program and their failure to take advantage of it, DVA has a comprehensive and ongoing duty to them under ORS 407.095 not to foreclose on their loan. They claim that they were attempting to obtain secondary financing and that DVA's agents were "receptive to and accepting" of that plan. There is no dispute, however, that, when the assignment was made, defendants were delinquent in payments in excess of $4,205 or that they had been notified by letter on November 13, 1986, that the balance due would be accelerated, unless their account was brought current by February 13, 1987. When it was not brought current, the balance was accelerated and DVA assigned the note and mortgage on April 24, 1987.

In the light of the statutory directive to consider the health of the program as a whole when implementing the policy that the statute expresses, defendants' claim that DVA had a duty not to foreclose in the circumstances lacks merit. Defendants were given more than three months to cure a long-standing default, and they failed to do so. DVA has complied with the statutory directive by creating a program for reduced payments for eligible participants. Its duty to veterans under ORS 407.095 does not extend beyond that. Our resolution of

this question also resolves the issues raised in the appeal from the foreclosure judgment.[4]

Judgment entered May 20, 1988, vacated; otherwise affirmed.

---

[4] The notice of appeal from the March 11, 1988, judgment of foreclosure is minimally adequate. On April 5, 1988, defendants filed their first notice of appeal, naming plaintiff as the adverse party, to which they attached a copy of an order dated March 7, 1988, directing "the entry of final judgment" for plaintiff. The order is not a judgment; it is not denominated as such and, therefore, does not comply with ORCP 70A. The notice of appeal also referred to "the judgment entered in this case on March 7, 1988." In fact, at that time, the trial court had entered two ORCP 67B judgments: one on January 21 with respect to DVA's counterclaim, and one on March 11, 1988, with respect to the foreclosure action. Neither was attached to the notice of appeal or referred to in any way that would make its existence apparent. To complicate matters further, on May 10, 1988, we issued an order stating that the document attached to the April 5 notice of appeal was not an ORCP 67B judgment and, because we were then unaware of the existence of the two appealable judgments, we granted leave to the trial court pursuant to ORS 19.033(4) to enter a final judgment on the motion of any party. On May 20, 1988, on defendants' motion, the trial court entered a document entitled "Judgment." Defendants attached it to their amended notice of appeal, filed May 20, 1988. Because there already was a final appealable judgment when we granted leave for entry of judgment, our May 10 order was in error, and we withdraw it and vacate the May 20 judgment. We are now concerned only with whether the April 5 notice of appeal was jurisdictionally adequate.

Although there is no jurisdictional requirement that a notice of appeal attach the judgment or other thing that is being appealed or contain the correct recitation of the date of entry of the judgment, *Werline v. Webber,* 54 Or App 415, 635 P2d 15 (1981), *rev den* 292 Or 450 (1982), when, as here, there are multiple judgments, there must be some intelligible reference in the notice of appeal to the judgment being appealed. *See Stahl v. Krasowski,* 281 Or 333, 573 P2d 309 (1979). Plaintiff, listed as the adverse party, was not a party to the January 21, 1988, judgment, but was the only adverse party with respect to the ORCP 67B judgment entered March 11, 1988. Although we cannot condone the practice of filing a notice of appeal that refers to the proper judgment only by identifying the proper adverse party, it is possible here to determine from which judgment the appeal is taken, because the adverse party is named; consequently, the notice is jurisdictionally adequate.