Argued and submitted July 21, 1998, dismissed in part; reversed in part; otherwise
affirmed January 19, 2000

## Mary Ann JEFFRIES
### and Wilma Jeffries,
*Appellants,*

*v.*

## David B. MILLS
### and Aaron J. Bell,
*Respondents.*

### (16-95-06217; CA A98657)

995 P2d 1180

David V. Gilstrap argued the cause for appellants. With him on the briefs was Davis, Gilstrap, Hearn & Welty.

Thomas W. Brown argued the cause for respondent David B. Mills. With him on the brief were Cosgrave, Vergeer & Kester, LLP, Charles D. Carlson, and Brown, Roseta, Long, McConville, Kilcullen & Carlson.

William G. Wheatley argued the cause for respondent Aaron J. Bell. With him on the brief were Maureen A. DeFrank and Jaqua & Wheatley, P. C.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

**LINDER, J.**

This is a legal malpractice action brought against two attorneys based on their failure to prevent the sale of stock in closely held family corporations. Plaintiff Mary Ann Jeffries first hired defendant-attorney David Mills to represent her in a bankruptcy matter. Mary Ann's judgment creditors offered to purchase Mary Ann's stock from the bankruptcy trustee and presented the proposal to the bankruptcy court for approval. Mills did not attend the hearing on the proposed sale or file objections on Mary Ann's behalf, and the bankruptcy court ordered the sale. Mary Ann subsequently hired defendant-attorney Aaron Bell to file a motion for relief from that order. That motion was denied. Later, Mary Ann brought this malpractice action against both Mills and Bell. Her mother-in-law, Wilma Jeffries, who also held stock in the family corporations, joined in the action and alleged negligence on the theory that the sale of Mary Ann's stock diminished the value of her own. The trial court entered summary judgment in favor of both defendants and against both plaintiffs.

Plaintiffs appeal, raising numerous assignments of error that call on us to resolve, *inter alia*, whether defendants owed a duty to Wilma, who was not their client; whether Mary Ann's claims against Mills were time-barred; and whether Mary Ann could establish causation with regard to her action against Bell. As we explain below, we hold that one of Mary Ann's counts against Mills was not time-barred. We therefore reverse entry of summary judgment as to that count. We dismiss Wilma's appeal of summary judgment entered in favor of Bell for lack of jurisdiction. In all other respects, we affirm.

## I. THE SUMMARY JUDGMENT RECORD

Because this case was resolved on a motion for summary judgment, we follow the familiar standard of review set out in *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). That is, we view the summary judgment record in the light most favorable to plaintiffs, the nonmoving parties, to determine if a genuine issue of material fact exists and if defendants are entitled to judgment as a matter of law.

*Id.* In this case, however, the parties dispute what records are properly before us on summary judgment. On appeal, plaintiffs assert that the affidavits they filed in response to Mills's motion for summary judgment created genuine issues of material fact precluding summary judgment. However, Mills challenged the competency of those affidavits below and urged the trial court to disregard them. Shortly thereafter, plaintiffs filed a motion for leave to file supplemental affidavits. They did not admit in that motion that the original affidavits were insufficient, but they did assert that the proffered supplemental affidavits were intended to correct any alleged insufficiencies. The trial court did not rule on Mills's challenge to the original affidavits and, as described below, ultimately denied plaintiffs' motion for leave to file supplemental affidavits. We cannot determine on this record whether the trial court actually considered the original affidavits in granting summary judgment. Before examining the record to determine whether defendants were entitled to summary judgment, we therefore must first determine what record is properly before us.

■      The dispute over plaintiffs' affidavits arose when, in response to Mills's motion for summary judgment, plaintiffs submitted affidavits from Mary Ann and her husband, Michael. Mills argued that the trial court should disregard those affidavits because they failed to comply with ORCP 47 D. That rule provides that supporting and opposing affidavits on summary judgment "shall be made on *personal knowledge*, shall set forth such facts as would be *admissible* in evidence, and shall show affirmatively that the affiant is *competent* to testify to the matters stated therein." (Emphasis added.) The adequacy of the affidavits under ORCP 47 D is a legal question. *German v. Murphy*, 146 Or App. 349, 353, 932 P2d 580 (1997).

Both Mary Ann's and Michael's affidavits consist of a series of one-sentence averments that merely incorporate specified paragraphs of the factual summary in plaintiffs' memorandum in opposition to summary judgment. That summary is 16 pages in length. It consists of numbered paragraphs containing statements that frequently blend factual allegations with legal conclusions. In incorporating paragraphs of the factual summary, often several at a time, the

affiants purport not to adopt the "legal conclusions" in the summary, but they do not identify the particular statements they consider to be the disavowed "legal conclusions." Likewise, in incorporating and adopting statements of fact from the summary, purportedly based on each affiant's personal knowledge, the affidavits do not identify the incorporated statements.[1]

The form and substance of the affidavits present other problems as well. Because of their novel structure, the affidavits provide scant basis for understanding whether or how the affiants had personal knowledge or are competent to testify regarding several of the factual allegations.[2] *See* ORCP 47 D (affiant must "show affirmatively" that he or she is "competent to testify to the matters stated therein"). Also, it is not obvious that all of the facts incorporated into the affidavits constitute admissible evidence. At a minimum, the process by which plaintiffs chose to place information into the summary judgment record did not allow for Mills to test, and for the court to determine, that the affidavits do. All in all, the form and substance of plaintiffs' affidavits made it impossible for either the trial court or Mills to glean the relevant averments from the 16-page summary and to determine if they complied with the requirements of ORCP 47 D.[3] We therefore hold that the affidavits did not comply sufficiently with the rule and should be disregarded along with the factual summary that they purport to incorporate.[4]

---

[1] For example, at one point Mary Ann's affidavit incorporates "[p]aragraphs 12, 13 and 14, except for the legal conclusions therein."

[2] For example, one paragraph of the factual summary incorporated into Mary Ann's affidavit consists largely of legal and factual assertions about Mills's knowledge and awareness of certain facts regarding the bankruptcy proceeding.

[3] *Compare McDonough v. Jones*, 48 Or App 785, 791-92, 617 P2d 948 (1980), *rev den* 290 Or 519 (1981) (disregarding affidavits that were not based on personal knowledge) *and Spectra Novae, Ltd. v. Waker Associates, Inc.*, 140 Or App 54, 59, 914 P2d 693 (1996) (affidavits consisting of legal conclusions are not sufficient to defeat summary judgment motion) *with Sisters of St. Joseph v. Wyllie*, 120 Or App 474, 478, 852 P2d 941 (1993) (one inadmissible allegation in an affidavit did not render the entire affidavit inadequate as a matter of law).

[4] We express no opinion as to whether, under other circumstances, an affidavit can satisfy ORCP 47 D if, instead of setting forth affirmative factual statements, it incorporates portions of other materials, such as the memorandum in support of or in opposition to the motion. It is enough to observe that, here, the affidavits were so defective in form that they could not meaningfully be tested against the requirements of the rule.

■        There remains, however, plaintiffs' challenge to the trial court's denial of their motion for leave to file supplemental affidavits, a matter for the trial court's discretion. *See* ORCP 47 D (trial court "may permit affidavits to be supplemented or opposed by depositions or further affidavits"). Mills urges that the trial court properly refused the supplemental affidavits because they were not "supplemental" at all but instead were a belated effort to shore up the deficiencies in plaintiffs' earlier affidavits. The trial court might well have been on solid ground had it denied the motion on that basis, assuming that plaintiffs previously had a reasonable opportunity to prepare and submit materials in response to the motion for summary judgment. *See Harris v. Erickson*, 48 Or App 655, 617 P2d 685 (1980). Here, however, the trial court ruled on a different basis: it refused to accept the supplemental affidavits because they raised allegations that fell outside of the scope of the complaint. The question, then, is whether the trial court's exercise of discretion on that ground was permissible.

■        The settled rule is that, on a motion for summary judgment, affidavits may raise issues that go beyond the pleadings if an amendment of a pleading to raise those issues would be warranted. *See, e.g., U.S. National Bank v. Miller*, 74 Or App 405, 409, 703 P2d 246 (1985). In offering the supplemental affidavits, plaintiffs conceded that they "clearly and certainly expand previous allegations relating to claims or defenses, and in some regards even change the form or nature of the claims being made." The trial court could not determine whether the filing of amended pleadings at that stage of the proceedings, to add allegations that had not been identified previously by plaintiffs, would be warranted. The trial court therefore advised plaintiffs that, before the court would accept the supplement affidavits, plaintiffs first had to seek leave to amend their complaint to include the new allegations, which would give the court the ability to decide meaningfully if an amendment was warranted.[5] Despite the

---

[5] Specifically, the court ruled that plaintiffs should request leave to file a second amended complaint, which would provide a basis for filing the affidavits "in some connection with that, with new allegations." Plaintiffs' counsel then asked for a time frame for filing an amended complaint and asked whether the trial court was giving plaintiffs leave to amend their complaint. The trial court reiterated that

court's invitation, plaintiffs never sought leave to amend their complaint. As a consequence, the request for leave to file the supplemental affidavits was never revisited.

We cannot say that the trial court abused its discretion on this record. As the trial court recognized, plaintiffs' entitlement to file supplemental affidavits raising new issues depended on whether an amendment to their complaint was warranted. Plaintiffs declined the opportunity to demonstrate that they would be entitled to amend their complaint at that stage of the proceedings. Plaintiffs therefore are in no position to complain about the trial court's ruling.

## II.   WILMA'S CLAIMS

Wilma joined in this action alleging that her stock in the family corporations lost value because of the bankruptcy sale of Mary Ann's stock and that both attorneys reasonably could have foreseen that harm. In moving for summary judgment, defendants argued that they did not at any time act as Wilma's attorney and therefore did not owe her a duty of care. The trial court agreed, and Wilma challenges the trial court's ruling.

### A.   *Wilma's claims against Bell*

As a threshold matter, Bell argues that we do not have jurisdiction to consider Wilma's appeal of the trial court's entry of summary judgment in his favor because Wilma failed to name him as an adverse party in her original notice of appeal. Bell was, however, served with the notice of appeal and was named as a party to the action generally. The question presented by Bell's challenge, therefore, is whether the failure to designate him *as adverse* was jurisdictional.

On June 30, 1997, the trial court entered summary judgment on Wilma's claims against both Mills and Bell. Judgment had not yet been entered on Mary Ann's claims. At

---

plaintiffs first should determine if they wanted to amend their complaint and, if so, in what way. The trial court was inviting counsel then to move for leave to amend the complaint and to provide the court with "statutory reasons and grounds to do so." Then, if plaintiffs had filed that motion together with a proposed amended complaint, the trial court would have what it needed to consider whether an amendment was warranted and whether the supplemental affidavits should be allowed.

Wilma's request, summary judgment on her claims was entered pursuant to ORCP 67 B so that Wilma could pursue a separate appeal in the matter. Although the judgment determined only Wilma's claims, a notice of appeal was filed listing both Wilma and Mary Ann as the appellants. Only Mills, however, was listed as a respondent. Bell was named but was not identified as a respondent. Specifically, the caption listed Mills and Bell separately, identifying Mills as "Defendant-Respondent" and Bell as "Defendant." In the section identifying "[t]he parties to the Appeal," only Mills was named, and he was again identified as respondent. In the next section, which listed information for the attorneys for the "respective parties," Mills's attorney was listed and identified as "Attorney for Defendant-Respondent." Bell's attorney was listed and identified as "Attorney for Defendant." Finally, in the section pertaining to certification of mailing, the notice of appeal identified Mills's and Bell's attorneys as having been served and, again, distinguished Mills's attorney as attorney for "Defendant-Respondent" and Bell's attorney as attorney for "Defendant."

Thus, the notice of appeal neither designated Bell as a party *to the appeal* (as opposed to a party to the action generally) nor as a respondent—*i.e.,* an *adverse* party. Yet, at every possible point, the notice of appeal did so designate Mills. Bell was not treated as a party to the appeal by our court, was not served with confirmation from our court that the appeal had been filed, and was not provided notice of any filing deadlines in the appeal. Approximately two months after entry of Wilma's ORCP 67 B judgment, the trial court entered summary judgment against Mary Ann on all claims against Bell and Mills. Rather than file a separate notice of appeal as to Mary Ann, plaintiffs filed an amended notice of appeal that named both Mills and Bell, in the caption and throughout the body of the notice, as respondents to the appeal.

In analyzing the jurisdictional issue that Bell raises, the starting point is ORS 19.270. That statute sets forth requirements for appellate court jurisdiction as follows:

"(1)   The Supreme Court or the Court of Appeals has jurisdiction of the cause when the notice of appeal has been

served and filed as provided in ORS 19.240, 19.250 and 19.255. * * *

"* * * * *

"(2)   The following requirements of ORS 19.240, 19.250 and 19.255 are jurisdictional and may not be waived or extended:

"(a)   *Service* of the notice of appeal on all parties identified in the notice of appeal as adverse parties or, if the notice of appeal does not identify adverse parties, on all parties who have appeared in the action, suit or proceeding, as provided in ORS 19.240(2)(a), within time limits prescribed by ORS 19.255.

"(b)   *Filing* of the original of the notice of appeal with the Court of Appeals as provided in ORS 19.240(3), within the time limits prescribed by ORS 19.255.

"(3)   After the Supreme Court or the Court of Appeals has acquired jurisdiction of the cause, the omission of a party to perform any of the acts required in connection with an appeal, or to perform such acts within the time required, shall be cause for dismissal of the appeal. In the event of such omission, the court, on motion of a party or on its own motion may dismiss the appeal."

(Emphasis added.)

ORS 19.270(2) is not an all-inclusive list of appellate court jurisdictional requirements. As the Supreme Court has held, the statute was intended by the legislature to clarify "the rules regarding which *service* and *filing* requirements are jurisdictional."[6] *Zacker v. North Tillamook County Hospital Dist.*, 312 Or 330, 336, 822 P2d 1143 (1991) (emphasis added). The required contents of a notice of appeal are set out in ORS 19.250. Particularly, ORS 19.250(1)(c) requires that a notice of appeal contain "notice to all parties or their attorneys as have appeared in the action or proceedings * * * *designating who are the adverse parties to the appeal.*" (Emphasis added.)

---

[6] ORS 19.250 and ORS 19.270 were renumbered in 1997 from ORS 19.029 and ORS 19.033, respectively. Several of the cases we cite in our discussion refer to the former numbers. To avoid confusion, we refer only to the renumbered versions of the statutes in our discussion of those cases.

■    In *Stahl v. Krasowski*, 281 Or 33, 573 P2d 309 (1978), the Oregon Supreme Court examined whether *only* service and timely filing of a notice of appeal are jurisdictional or whether defects in the contents of the notice may also determine the court's jurisdiction. The court held that at least some defects in content are jurisdictional, reasoning that the upshot of a contrary conclusion would be "that any document entitled 'notice of appeal' which was filed within the required time would be sufficient to give the court jurisdiction whether it contained anything at all." *Id*. at 38. The court therefore concluded that, although not all of the content requirements of ORS 19.250 are jurisdictional, some are. For example, as recognized in *Stahl*, a description of the trial court action being appealed is jurisdictional because of its importance in providing essential notice of the appeal. *Id*. at 39. *See also Zacker*, 312 Or at 334 (in specifying jurisdictional requirements for filing and service, legislature did not intend to overrule *Stahl*).

■    The touchstones of appellate jurisdiction are minimally adequate notice and timeliness in the filing of the notice of appeal. Consequently, we have declined to hold that content defects in a notice of appeal are jurisdictional when the nature of the defect is such that the party received adequate notice. For the notice to be "minimally adequate," it must contain enough information reasonably to apprise the adverse parties that an appeal is being taken from an appealable judgment. *Smith and Koors*, 149 Or App 198, 201-03, 942 P2d 807 (1997); *Kent v. Lindstedt*, 138 Or App 316, 319, 908 P2d 833 (1995); *Grant County Federal Credit Union v. Hatch*, 98 Or App 1, 6 n 4, 777 P2d 1388, *rev den* 308 Or 592 (1989). In other words, if the parties with an interest in the judgment receive reasonable notice that their rights in a particular judgment might be affected, then a content defect will not be jurisdictionally fatal.

■    Applying that test to the notice of appeal here, we hold that, under these particular circumstances, the failure to designate Bell as an adverse party in the original notice of appeal is jurisdictional. Here, the original notice of appeal went to pains to identify Mills throughout as a "respondent" while designating Bell as only a "defendant." *See* ORAP

2.05(1) (caption of notice of appeal shall name all parties completely using their designations in the trial court (*e.g.*, plaintiff, defendant) and *designating the parties to the appeal, as appropriate* (*e.g.*, appellant, respondent)). Bell reasonably could conclude from the designations that he was not a party to the appeal because Wilma would be challenging only the summary judgment as to the claims against Mills, not summary judgment in Bell's favor. The defect is not meaningfully distinguishable from the failure to designate the proper judgment from which the appeal is taken. *Cf. Stahl,* 281 Or at 39 (designation of that which is appealed from is jurisdictional). In either situation, despite being served, the party receiving the notice of appeal is not reasonably on notice that his or her rights in the judgment may be affected by the appeal.[7]

Bell was not added as a respondent to the notice of appeal until plaintiffs filed an amended notice of appeal some two months after entry of judgment on Wilma's claim against him. Because Bell was entitled to the concurrence of both *adequate* and *timely* notice, the amended notice, which was filed more than 30 days after entry of the judgment being appealed, could not cure the jurisdictional defect. *See Bourgeois v. Grenfell,* 72 Or App 415, 417, 695 P2d 974, *rev den* 299 Or 313 (1985) (where one defendant was not named as an adverse party in the notice of appeal, appeal was not perfected as to him; the remedy was to dismiss appeal as to that party only).[8]

Accordingly, we dismiss Wilma Jeffries's appeal as to the judgment entered in favor of defendant Bell.

---

[7] We emphasize that the notice problem exists in this case because of the specific designation of Mills as a party respondent, and no similar designation of Bell as adverse. ORS 19.270(2) provides that, when the notice of appeal does not designate any of the parties as adverse, then all parties must be timely served. In effect, in the absence of a special designation of adversity, all of the parties are deemed to be adverse.

[8] *Street v. Gibson,* 60 Or App 768, 771, 655 P2d 604 (1982), *aff'd* 295 Or 112, 663 P2d 769 (1983), is distinguishable. There, we allowed the appellants to amend a notice of appeal naming only one appellant and, by the amendment, to add a second appellant to the case. We concluded that the error did not prejudice the respondent. *Street* differs from this case because, there, the respondent was named as an adverse party and, therefore, was on notice that his rights in the judgment might be affected by the appeal. The only change achieved by allowing the amendment was that an additional person would be challenging the same judgment. Here, Bell's prejudice is real: He received inadequate notice that an appeal had been taken by which his rights in the judgment were placed at risk.

## B. *Wilma's claims against Mills*

No similar defect is involved in Wilma's appeal of the summary judgment entered against her on her claims against Mills. Consequently, as to those claims, we must decide whether Mills owed Wilma a duty of care to protect her from economic losses.

■       An attorney is liable for a third-party's economic losses resulting from actions taken within the scope of an attorney-client relationship with another only if the third party first demonstrates the *"existence* of a special relationship in which the defendant had some obligation to pursue the plaintiff's economic interests." *Roberts v. Fearey*, 162 Or App 546, 550, 986 P2d 690 (1999) (emphasis in original); *see also Hale v. Groce*, 304 Or 281, 283-84, 744 P2d 1289 (1987). Wilma concedes that Mills did not act as her attorney and, thus, that she was not in privity with him. She, therefore, casts her claims as "common law negligence" actions, rather than actions for legal malpractice, and argues that general foreseeability principles of *Fazzolari* should apply. *See generally Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987). Her argument, however, is unavailing. In the context of an action asserting the existence of an obligation to protect economic interests, *Fazzolari's* foreseeability analysis comes into play only if a special relationship is first demonstrated. *Roberts,* 162 Or App at 550. Wilma has not demonstrated a special relationship—*i.e.,* privity or some other basis to find that defendants had an obligation to pursue her economic interests. Accordingly, the trial court properly granted Mills's motion for summary judgment on Wilma's claims.

## III.   MARY ANN'S CLAIMS

We turn to Mary Ann's claims. Mary Ann alleged two counts of malpractice against Mills. The first count related to Mills's allegedly negligent representation of Mary Ann before the hearing and his failure to prevent the bankruptcy court from ordering the stock sale. In the second count, Mary Ann alleged malpractice based on Mills's later failure to appeal or to move for reconsideration of the order. The trial court ruled that Mary Ann's cause of action on her first count is time-barred because the original complaint was

not filed within the statute of limitations. As to the second count, which plaintiff added to the original complaint by amendment, the trial court ruled that it was time-barred because it did not relate back to the filing of the original complaint. Mary Ann assigns error to both rulings. Mary Ann also assigns error to the trial court's entry of summary judgment in favor of Bell. We discuss the claims against each attorney in turn.

A. *Mary Ann's claims against Mills*

  1. *Count One: Representation before the bankruptcy court's ruling*

The bankruptcy court approved the stock sale on June 29, 1993, following a hearing. Mary Ann filed her malpractice complaint against Mills exactly two years later, on June 29, 1995. In her complaint, she alleged, among other things, that Mills failed to make reasonable efforts to dismiss the involuntary bankruptcy and failed to prevent the bankruptcy court from ordering the stock sale. If Mary Ann's cause of action accrued on or after June 29, 1993, then it was filed within the two-year statute of limitations for legal malpractice. *See* ORS 12.110(1); *U.S. Nat'l Bank v. Davies*, 274 Or 663, 665-66, 548 P2d 966 (1976) (statute of limitations for legal malpractice is two years). Mills argues, however, that it accrued before that date because all of the allegedly negligent conduct occurred before the June 29 hearing and Mary Ann knew before then that she was likely to lose her stock. Mills argues alternatively that, if Mary Ann's cause of action as a whole is not barred by the statute of limitations, then some of the allegations are individually time-barred.

A cause of action for legal malpractice must be brought within two years of the date on which the action for the "injury" accrues. *Id.* The cause of action accrues when the plaintiff suffers a legally cognizable harm and knew or should have known that the damage was caused by the lawyer's acts or omissions. *See Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993) (quoting *U.S. Nat'l Bank*, 274 Or at 666-67, 670). Mary Ann alleges that she was harmed by the stock sale. The bankruptcy court ruled on the proposed stock sale on June 29, 1993, and ordered it to occur. Because of the nature of the injury that Mary Ann alleges, we agree that

June 29, 1993, was the first date upon which a reasonable factfinder could conclude that Mary Ann actually suffered a legally cognizable harm.[9] She may have had a basis to be concerned before that date that she would lose her stock or otherwise not prevail in the bankruptcy proceeding. But until the court's actual entry of an order to that effect, the injury could at most be contemplated as a possibility. Her complaint was filed exactly two years after the trial court approved the sale. Consequently, her cause of action is not barred by the statute of limitations.

■■ ■■ Nor are any of the discrete specifications of negligence in Mary Ann's complaint time-barred. Mills points in particular to Mary Ann's allegation that Mills was negligent because he failed to succeed in obtaining a dismissal of the bankruptcy action in 1992. An individual specification of negligence or other tortious conduct, although set forth as part of a single cause of action, may be barred by the applicable statute of limitations if it alleges a harm that would be separately actionable. *See generally Davis v. Bostick*, 282 Or 667, 580 P2d 544 (1978). The specification that Mills asserts is separately time-barred does not fall into that category, however. Here, Mary Ann alleges a single harm—*i.e.*, the court-ordered sale of the stock—that is a consequence of several allegedly negligent acts and omissions; she does not allege a series of harms, any one or several of which might have been actionable at the time that the individual acts or omissions occurred. *See id.* at 673-74 (distinguishing separately actionable allegations from continuous torts and from a tort based on a harm that is cumulative of a series of acts). Thus, even as to the single specification based on Mills's failure to obtain a dismissal of the bankruptcy action in 1992, the earliest that the claim accrued was June 29, 1993, when the bankruptcy court orally ordered the sale. That individual specification therefore also is not time-barred. *See Barnard v. Lannan*, 112 Or App 625, 629, 829 P2d 723 (1992) (where alleged harm is

---

[9] The trial court seems correctly to have determined the accrual date to be the date that the bankruptcy court ordered the sale of the stock. The trial court concluded that the cause of action was time-barred apparently because it mistakenly believed that the original complaint was filed on July 5, 1995. That was incorrect. All parties agree that the original complaint was filed on June 29, 1995.

due to outcome of case, legal malpractice action does not run based on intermediate and nonfinal rulings of court).

Mills also asserts that he is entitled to summary judgment because, as to count one of her complaint, Mary Ann cannot establish any of the elements of legal malpractice. The trial court did not reach Mills's contentions in that regard because the court concluded that Mary Ann's first count of negligence was time-barred. Mills renews those arguments on appeal. *See Capital Investments v. Lofgren*, 81 Or App 93, 97, 724 P2d 862 (1986) (even if trial court's reason for granting summary judgment were incorrect, we may affirm on other proper grounds). We conclude that none of Mills's alternate arguments provides a basis for summary judgment on count one.

■  First, Mills challenges the adequacy of Mary Ann's allegations of negligence to establish one or more of the elements of duty, breach, or causation. Mills addresses, however, only seven of the eight allegations; he does not assert a deficiency in the allegation that he was negligent in failing to obtain a dismissal of Mary Ann's involuntary bankruptcy proceeding on the basis that it was improperly filed. Because Mills does not controvert that allegation or argue its legal insufficiency, he is not entitled to summary judgment on Mary Ann's first count of negligence. *See Kutbi v. Thunderlion Enterprises,* 73 Or App 458, 464, 698 P2d 1044, *rev den* 299 Or 584 (1985).[10]

■  Mills also argues that, as a matter of law, Mary Ann did not suffer any damages. Mills proffered evidence demonstrating that, by the time Mary Ann lost her stock in the bankruptcy, all of the corporations' assets had been sold. Mills produced two letters written by Mary Ann's attorney in this case, in which he acknowledged that the "value of Mary Ann's stock, the equity value, at the time of [Mills's alleged] negligence could be zero" and further admitted that Mary Ann would have difficulty proving damages because the corporate liabilities assumed in the sale were equal to the assets

---

[10] Mills does not argue that he is entitled to partial summary judgment with respect to any of the portions of count one. *See Stevens v. Horton,* 161 Or App 454, 460, 984 P2d 868 (1999) (a plaintiff may seek partial summary judgment with respect to an element of negligence).

of the corporations. Mills contends that those admissions establish that, as a matter of law, Mary Ann did not suffer any damages in losing her stock.

To prevail on that point, Mills would have had to produce the type of evidence that would conclusively demonstrate that Mary Ann did not suffer any harm as a result of the loss of her stock. *See Preble v. Schwabe, Williamson & Wyatt*, 128 Or App 249, 252, 875 P2d 526 (1994). We disagree that the evidence that Mills produced meets that exacting standard. The corporations' lack of assets may serve to demonstrate that the value of the stock at the time of the sale was diminutive, but it does not establish necessarily that the stock had absolutely *no* value. The value of stock in a closely held corporation is not always the mirror image of the value of the corporation's assets. For example, in the dissenting shareholder arena, "fair value" of stock in a closely held corporation encompasses several factors: asset value, market value, and enterprise value (earnings or investment value). *See Columbia Management Co. v. Wyss*, 94 Or App 195, 199, 765 P2d 207 (1988), *rev den* 307 Or 571 (1989) (discussing those factors in determining "fair value" under Oregon's statutes allowing a dissenting shareholder of a close corporation to obtain payment for shares); *see also* ORS 60.551(4) (defining "fair value"); ORS 60.577(1) (providing for payment of "fair value" of stock to dissenting shareholder).

To conclude that Mary Ann did not suffer any damages, we would have to be willing to infer that stock in a corporation with no assets has no value whatsoever to anyone. That inference perhaps is a permissible one, but we do not agree that it is a legally necessary one. Whether to draw that inference in a particular case, with reference to stock in a particular corporation, should be left to a jury. Viewing the record in the light most favorable to Mary Ann, we cannot conclude that the record on summary judgment conclusively establishes that Mary Ann did not incur any damages. The trial court erred in entering summary judgment on count one.

*2. Count Two: Representation after the bankruptcy court's ruling*

The next issue is whether the trial court correctly concluded that Mary Ann's second count of negligence was

time-barred. Mary Ann added count two in her amended complaint, filed on August 28, 1996. In that count, she alleged negligence based on assertions that Mills failed to appeal, to file a motion for reconsideration, and to advise her to seek other counsel. All of the acts and omissions alleged in that count occurred between June 29, 1993, and December of that same year, when Mills ceased representing Mary Ann.[11] The trial court ruled that the second count did not relate back to the date of the filing of the original complaint because it involved "discrete and new matters of negligence." The court therefore determined that the count was time-barred. We agree.

ORCP 23 C provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The rule's concern is one of notice. *Welch v. Bancorp Management Services,* 296 Or 208, 221, 675 P2d 172 (1983), *modified* 296 Or 713, 679 P2d 866 (1984). A newly alleged cause of action may relate back to the filing of the original complaint if the defendant would have been able to discern from the earlier pleading a potential for the additional basis of liability. *Evans v. Salem Hospital,* 83 Or App 23, 32, 730 P2d 562 (1986), *rev den* 303 Or 331 (1987). Thus, the new claim must arise out of or directly involve the occurrence that was originally alleged. *Allison v. Kleinman,* 126 Or App 298, 301, 868 P2d 764 (1994) (citing *Caplener v. U.S. National Bank,* 317 Or 506, 522, 857 P2d 830 (1993)).

Here, the first count alleged conduct that occurred before and on the date of the bankruptcy hearing and that related to Mills's representation of Mary Ann in the course of the bankruptcy proceedings. According to Mary Ann's complaint, after the bankruptcy court entered its order, she negotiated with Mills to continue to represent her and achieve a

---

[11] Mary Ann alleges that Mills ceased representing her in December 1993. Mills did not officially withdraw as counsel until March 2, 1994. The order authorizing that withdrawal, however, was not part of the record on Mills's motion.

dismissal of the bankruptcy action through a possible appeal or reconsideration of the bankruptcy court's order.[12] The second count is directed to acts and omissions that Mills allegedly took pursuant to that further agreement.

In these particular circumstances, Mary Ann's second count of negligence does not bear a sufficient relationship to the first. Mills's representation of Mary Ann in the initial bankruptcy hearing involved judgments and professional choices that were distinct and independent, both in substance and time, from those involved in her attempt to determine how to respond legally to the bankruptcy court's unfavorable order. Mary Ann's original complaint put Mills on notice that he was being sued for negligence based on his allegedly inadequate representation in connection with his efforts to prevent the bankruptcy court from ordering the sale of Mary Ann's stock. That claim did not give Mills any inherent notice of or reason to assume that later acts or omissions concerning appeal and reconsideration would likewise be charged as negligent. The second count therefore does not relate back. *See Caplener*, 317 Or at 522-23 (new tort allegations based on bank's efforts to secure repayment of initial advancements of a loan that it eventually declined to make were insufficiently related to original tort allegations based on bank's denial of loan). Consequently, August 28, 1996, the date on which the amended complaint adding count two was filed, is the relevant filing date for purposes of determining whether the second count falls within the statute of limitations.

The next question, then, is whether Mary Ann's cause of action on the second count accrued more than two years before that date. Mary Ann alleged that all of the acts

---

[12] Mary Ann alleged that "Mills verbally promised * * * that if she would continue to allow him to represent her and would continue to pay for his services as her attorney, that he would accomplish restoring her stock ownership * * * and promptly obtain dismissal of the involuntary Chapter 7 bankruptcy." Those allegations were made in a separate breach of contract claim, which Mary Ann later voluntarily dismissed. Although Mary Ann is not necessarily bound by the admissions in the dismissed claim, they are evidence of the fact admitted. *See Yates v. Large*, 284 Or 217, 223, 585 P2d 697 (1978) (admissions in superseded pleadings are not binding judicial admissions but are evidence).

and omissions in the second count occurred between September 1993 and December 1993. Mary Ann urges us, nevertheless, to adopt May 20, 1996, as the accrual date because that is when she allegedly learned that her stock was "irretrievably lost." That accrual date, would save the second count from being time-barred. Mary Ann did not raise that argument below, however. She argued only that her cause of action on count two accrued on September 16, 1994, which was the date the bankruptcy court denied the motion for relief from its order. She took the position below that, for purposes of the second count, she "knew with certainty that Mills'[s] conduct had caused actual harm" as of that date. On appeal, she abandons her September 16, 1994, accrual theory and relies only on the May 20, 1996, date. We decline to consider her new contention, especially when to do so would permit her to admit to the trial court that she knew she was harmed as of September 16, 1994, and then inconsistently argue on appeal that she did not know that she was harmed until almost two years later. Mary Ann does not present any other argument upon which we could reverse the trial court's ruling. We therefore hold that the trial court did not err in determining that the second count was time-barred, and we affirm as to that count.

## B. *Mary Ann's claim against Bell*

Mary Ann also assigns error to the trial court's entry of summary judgment in favor of Bell, the attorney who represented her for purposes of filing a motion for relief from the bankruptcy court's order. Bell replaced Mills as Mary Ann's attorney of record in March 1994. He filed a motion for relief from the bankruptcy court's order on July 28, 1994, more than one year after the order was entered. The bankruptcy court denied that motion both because it was filed late and because it did not set forth adequate grounds for relief. In her malpractice claim against Bell, Mary Ann alleged that, but for Bell's untimely filing of the motion, she would not have lost her stock. Bell moved for summary judgment, arguing that Mary Ann could not prove the "causation" element of her claim because the bankruptcy court would have denied the motion even if it had been timely filed. The trial court, in granting summary judgment, agreed. On appeal, Mary Ann

argues that the causation issue in this case presents a question of fact for a jury's resolution and, consequently, that the trial court erred.

■■■■ To show causation in a legal malpractice action, a plaintiff must demonstrate that she would have obtained a more favorable result in the earlier action if the attorney had not been negligent. *Chocktoot v. Smith*, 280 Or 567, 570, 571 P2d 1255 (1977). When the "more favorable result" depends on how a factfinder would have resolved the case but for the attorney's negligence, causation is a factual issue in the malpractice case. When, however, the attorney's alleged negligence involved the handling of a legal matter decided by the court, causation is to be resolved as a legal question. *Id.* at 571-73. An attorney's failure to file a motion in a timely matter is a classic example of the latter: "The legal consequences of an attorney's failure, in the earlier case, to present a timely pleading or motion or to take an appeal are matters for argument, not proof." *Id.* at 573. Thus, the "question what decision should have followed in the earlier case if the defendant attorneys had taken proper legal steps is a question of law for the court." *Id.* at 575.

■■■■ Mary Ann nevertheless asserts that a factual issue was presented in this case. In support of that position, she argues on appeal, as she did below, that "if the bankruptcy court had reached the [motion for relief] on the merits, then that court could not have arrived at any decision until both the true value of the stock and the true amount of the purchase price paid * * * had been determined upon evidence." Similarly, she points us to other alleged factual disputes that, she asserts, a jury would have to decide to determine whether the bankruptcy court would have ruled in her favor if "Bell had timely filed the motion and been allowed to present all available evidence on the merits at a hearing."

The problem with Mary Ann's argument is that it does not address the criteria for granting relief from the bankruptcy order. Her argument assumes that merely filing a motion for relief—any motion for relief—within one year would ensure reconsideration of whether the bankruptcy court should have ordered the sale of the stock. That assumption is wrong. A motion for relief, even if timely filed, must

provide some extraordinary basis for granting relief from the order. Merely asserting that there is a factual basis to conclude that the order is erroneous is not enough. Under the relevant federal rule, proper grounds include: mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud or misrepresentation on the opposing party's part; or other reason justifying relief from operation of the judgment. FRCP 60(b).[13]

Significantly, Mary Ann does not argue that, as a matter of law, Bell's motion for relief would have been adequate under FRCP 60(b) had it been timely filed. Rather, as she expressly asserts, the disputed factual issues on which she relies to avoid summary judgment relate to "the merits" of whether a sale should have been ordered by the bankruptcy court. She has done nothing on appeal to demonstrate that there was a factual issue with regard to the adequacy of Bell's motion or the judgments he made regarding the motion's substance—*e.g.*, whether Bell somehow failed to make an argument under FRCP 60(b) that would otherwise have warranted the allowance of the motion. Consequently, Mary Ann's arguments provide no basis to disturb the trial court's conclusion that, even if Bell's motion for reconsideration had been timely filed, it would have been denied. Summary judgment in favor of Bell was therefore proper.

Plaintiff Wilma Jeffries's appeal as to defendant Aaron Bell dismissed; summary judgment on count one of Mary Ann Jeffries's claim against defendant David Mills reversed; otherwise affirmed.

---

[13] With some exceptions that are inapplicable here, FRCP 60(b) applies to bankruptcy proceedings. FRBP 9024. That rule provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud * * *, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."