Argued and submitted June 10, 2014, affirmed March 9, petition for review denied June 30, 2016 (359 Or 847)

SPRINGVILLE CORPORATION,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

STOEL RIVES LLP,
an Oregon limited liability partnership;
and James N. Westwood, an individual,
*Defendants-Respondents,*

*and*

TARLOW NAITO & SUMMERS LLP,
an Oregon limited liability partnership,
*Defendant.*

Multnomah County Circuit Court
110201670; A151806

372 P3d 14

Bonnie Richardson argued the cause for appellant. With her on the briefs were Shannon Flowers and Folawn Alterman & Richardson LLP.

Brian R. Talcott argued the cause for respondents. With him on the brief were Thomas H. Tongue, Randy L. Arthur and Dunn Carney Allen Higgins & Tongue LLP.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

ARMSTRONG, P. J.

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**ARMSTRONG, P. J.**

Plaintiff Springville Corporation brought an action for legal malpractice against defendants Stoel Rives LLP and attorney James N. Westwood,[1] alleging, among other things, that Stoel Rives had given it erroneous legal advice about the need to appeal a limited judgment in a construction case in which Springville was the defendant.[2] *See Interstate Roofing, Inc. v. Springville Corp.*, 347 Or 144, 218 P3d 113 (2009) (describing the underlying case). The trial court granted Stoel Rives's motion for summary judgment on the ground that Springville had failed to establish that there was a genuine issue of material fact on the causation element of Springville's malpractice claim and, accordingly, Stoel Rives was entitled to judgment as a matter of law. Springville appeals the resulting general judgment of dismissal, challenging the trial court's ruling on summary judgment. Because Springville did not establish that a timely appeal would have resulted in a reversal of the limited judgment in the underlying case, we agree with the trial court that Stoel Rives was entitled to summary judgment. Accordingly, we affirm.

## I. BACKGROUND

### A. *The Underlying Case*

Springville contracted with Interstate Roofing, Inc., to remove and replace siding, exterior decks, stairs, and stair landings and repair dry rot on five of eight separate buildings in a 128-unit condominium complex owned by Springville, specifically buildings A, B, C, D, and F. At some point, Springville stopped making payments under the contract due to alleged defects in the work.

Interstate then brought an action in Washington County Circuit Court, alleging three claims for relief against

---

[1] To avoid confusion in this "case within a case," rather than follow our usual convention of referring to the parties on appeal according to their designations below—that is, "plaintiff" and "defendant"—we refer to them by name in this opinion. In addition, for convenience, we refer to both defendants as "Stoel Rives."

[2] The complaint also alleged malpractice against defendant Tarlow Naito & Summers LLP; that claim was resolved by a stipulated limited judgment of dismissal.

Springville: (1) foreclosure of a construction lien for unpaid work by Interstate on Building F; (2) breach of contract; and (3) *quantum meruit*.[3] Springville, through its trial counsel, Tarlow Naito & Summers LLP, denied liability and brought counterclaims against Interstate for breach of contract and negligence.

Springville submitted a written demand for a jury trial. In pretrial proceedings, the court acknowledged that Interstate's lien-foreclosure claim on Building F was a matter for the court, but that all of the other claims—namely, Interstate's breach-of-contract and *quantum meruit* claims, as well as Springville's counterclaims for breach of contract and negligence—were jury-trial claims, and the parties and the court discussed at length how best to try the case given those circumstances.

At a pretrial hearing on July 18, 2006, the court suggested that the best course of action would be to try all of the claims at the same time, and counsel for Interstate agreed:

> "[THE COURT]: The foreclosure matter then, in terms of finding whether the lien itself would be allowed or not is to the Court. And the remaining matters are to the jury. * * *
>
> "* * * * *
>
> "Maybe we should just wait until we get to this point, but it seemed to me that would it not be better to just try the whole thing to the jury with me, doing it to the Court at the same time. * * *
>
> "MR. WELBORN: All right. Your Honor, on behalf of Interstate Roofing, I believe that it would be a cleaner, easier approach if we did take that approach, and we tried the whole cases as one. And the foreclosure action, reserving for yourself that decision on that lien, but trying the whole cases as one there. So we'd start out the case, prove our lien case. Then it would turn over to Springville. They'd put on their defense and counterclaim, and we'd defend that case."

---

[3] The case was consolidated for trial with a second action filed by Interstate seeking indemnity and contribution from other parties.

Springville's counsel, however, argued for bifurcation:

"MR. TARLOW: The option that allow—that is first to be made is whether or not you bifurcate the case and try the lien case yourself and put the jury trial on all other issues off, so that we would be trying the lien case only. We would not be trying the indemnity case.[4] We'd be trying the counterclaim case, but we would not be trying the indemnity, and we would have—the jury trial issues all would be put off.

"That case is a shorter case. It creates judicial efficiency because of the time that is involved. It avoids any of the problems that took these three cases to the appellate courts in the first instance [referring to *Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003); *Westwood Corp. v. Bowen*, 108 Or App 310, 815 P2d 1282 (1991), *rev dismissed*, 312 Or 589 (1991); *DeWitt-Erickson Const., Inc. v. Moran Const. Co.*, 86 Or App 474, 739 P2d 1071, *rev den*, 304 Or 280 (1987)]. And what would then be the options of the trial lawyers is whether or not, given whatever your decision is, either of—either side would be interested in spending the time and the money and the effort to do it all over again because if it's done either together or separate, we, assuming we're going to prevail, get two bites at the apple.

"So that the way this works is, whether we try it in front of the jury and the Court at the same time or later, if we prevail, we get the best of the two results. We get the best of the two results. And that's what happened in the Westwood case.

"Now, so I get two bites at the apple. So there's some advantages to me, or to my client, to having this tried twice; whether the twice is simultaneously or the twice is sequential.

"In addition, there are some tactical reasons for—which will not become apparent until later in the case, for us to be trying this case in front of a jury, as opposed to the Court. However, having said that, it is cheaper for the parties, it's more efficient for the Court and the system, and there is much less chance of an appeal if this case is tried to the—to the Court. That is, it's bifurcated and the rest of the case and cases are put off till later."

---

[4] *See* 276 Or App at 728 n 3.

The court and trial counsel for Springville then discussed what would happen if—whether tried together or separately—the process yielded inconsistent results:

"MR. TARLOW: Well, you can't control that. I mean, you can't control that because presumably you're going to call them the way you see them, the jury's going to call it the way they see it, and we have the potential for inconsistent results, which for sure takes everybody in this courtroom, all the litigants and whoever's writing the checks, all the way up probably to the Supreme Court. Not a good result for everybody—anybody.

"So if we talk about, well, what's the most efficient, least cost way to do this, with the best opportunity to do it once and only once, it is to bifurcate as the—as the other case—

"* * * * *

"* * *—the Safeport case, what that judge did, bifurcate it, try the lien case now, and then the parties and I presumably aren't going to come back a second time because at that point, everybody knows what everybody's going to do, there aren't any more surprises, there aren't any more secrets, everybody's seen the witnesses. They know the experts are going to perform. They're not going to be able to get the experts to change their opinions because, you know, everybody's tied down with all the examination. And it's likely it happens once."

The discussion continued the next day. Springville's counsel continued to argue for bifurcation, while counsel for Interstate was in favor of trying the whole case simultaneously, with the court deciding the lien claim and the jury deciding the other claims. The court ultimately decided that the trial would proceed initially only to the court, with any remaining jury questions to be litigated in the future. Because Interstate's lien claim concerned only one of the buildings—Building F—and it had made its own request for a jury trial on Springville's counterclaims with regard to Buildings A, B, C, and D as well, Interstate's counsel sought to clarify the scope of the proposed court trial:

"MR. WELBORN: * * * And just so I'm clear about what is going to happen in the next couple of weeks here, we are trying the lien case to you. They're [*i.e.*, Springville]

bringing on their defenses and counterclaim only with regard to [Building] F?"

Springville's counsel disagreed with that proposition, and indicated his understanding that the court was also going to rule on Springville's counterclaims as to Buildings A, B, C, and D, stating, "That's the way it works, Your Honor. The entire case gets tried." However, counsel also indicated that he understood that there would also be a jury trial on the counterclaims, that it was just a matter of the "timing" of that jury trial. Counsel reiterated that his understanding of ORS 87.060[5] and the relevant caselaw was that he "get[s] two bites at the apple," and "if, in fact, both the judge and the jury come in in our favor, but in different amounts, I get the biggest. I get the biggest one." He also explained that he understood *Westwood* to stand for the proposition that,

"because there's a constitutional right to a jury trial, there's no preclusion because the statutory case can't preclude the constitutional right to a jury trial. And there's no issue preclusion and there's no law of the case and there's none of that stuff because you have an absolute right to a jury trial."

The trial court ultimately accepted Springville's proposed method of proceeding, explaining to Interstate that it would still get a jury trial on the counterclaims, "but it's not going to be in the Court trial that we do that will

---

[5] As relevant, ORS 87.060 provides, in part:

"(3) In a suit to enforce a lien perfected under ORS 87.035, the court shall allow or disallow the lien. *If the lien is allowed, the court shall proceed with the foreclosure of the lien and resolve all other pleaded issues.* If the lien is disallowed, and a party has made a demand for a jury trial as provided for in subsection (4) of this section, the court shall impanel a jury to decide any issues triable of right by a jury. All other issues in the suit shall be tried by the court.

"(4) A party may demand a trial by jury of any issue triable of right by a jury after the lien is disallowed, if that party serves a demand therefor in writing upon the other parties at any time prior to commencement of the trial to foreclose the lien. The demand shall be filed with the court. The failure of a party to serve a demand as required by this subsection shall constitute a waiver by the party of trial by jury. A demand for trial by jury made as provided in this subsection may not be withdrawn without the consent of the parties."

(Emphasis added.)

include the same information. It will be the one that occurs after that. So that's my reading of it." Interstate's counsel reasserted its position that, because its lien claim related only to Building F, if the court was going to bifurcate and try the lien case first, under ORS 87.060, "this lien foreclosure action and the counterclaim should be limited to the issues raised with regard to Building F." Springville's counsel again disagreed, arguing:

> "[ORS 87.060] is clear; it's all of the pleaded issues. We get to present our entire counterclaim. And it's not limited to [Building] F. I mean, *and we're looking for an affirmative judgment on our counterclaims, as pled.*"

(Emphasis added.) The court ultimately agreed, over Interstate's objection, that Springville was entitled to proceed with all of its counterclaims in the court trial.[6]

In the court trial that followed, Springville introduced evidence and argued in support of an award of damages on all of its counterclaims. During closing argument, Springville argued, among other things, that

> "Springville is entitled to have you find in [its] favor on the counterclaim on liability based on negligence per se[,] based on common law negligence[,] and based on breach of contract. And, of course, we've briefed that economic loss doctrine issue. * * *
>
> "But the point being that it's not—I don't know that it's absolutely necessary for you to reach—to decide that. Because what you can do is just decide in favor of Springville without specifying what legal theory you're using. I think that's a perfectly acceptable way to do it. Although, I think on the merits, clearly we win that one."

The court announced its rulings from the bench after hearing closing arguments. First, as to Interstate's lien claim, the court held that it "will not uphold the lien, based solely on the fact that I believe the lien—the lien was overstated." Second, regarding Springville's negligence counterclaim, the court stated, "I do find as a matter of law that

---

[6] Interstate renewed its objection the following day, reiterating that, under ORS 87.060, as interpreted in *Safeport, Inc.*, "F is the [only] counterclaim that we should be trying in this bifurcation." The court adhered to its earlier ruling.

negligence per se and negligence as a theory does not apply and that there is no tort remedy available to Springville." Finally, as to Springville's breach-of-contract counterclaim, the court ruled as follows:

"So I do find that there is a cause for a breach of contract, and I will award damages based on that. * * *

"* * * * *

"But on the issue of how do we figure out what this is really worth, I think that he [Interstate's expert] comes closer to the mark. And so we already know that—because I said that the lien, I'm not invalidating that because I think that there is no value to it. I'm invalidating it on one of the theories Mr. Tarlow put forth, which I think is correct, is that it was overstated.

"So what I'm simply going to do, then, is order damages in the amount of * * * [$]346,872.22. And had the lien been not invalidated, I would have made that more. But I think that captures it."

The court also acknowledged that "[t]here are still rights to have a jury trial. I don't assume anything about what you might want to do about that."

Both parties submitted proposed forms of a limited judgment. As pertinent to this appeal, Springville's proposed limited judgment recited that a bench trial was held "of the construction lien foreclosure case and related claims and counterclaims. The court bifurcated for a trial at a later date the claims triable to a jury as provided in ORS 87.060(4)." The proposed judgment also ordered judgment in Springville's favor on the breach-of-contract claim in the amount ordered by the court—$346.872.22. Ultimately, because the parties could not agree, the court prepared and entered its own limited judgment, which provided, as relevant:

"Given that some of the subject claims contain a right to jury and some do not, and given that neither side was willing to waive their right to a jury on every claim, the Court heard from both parties on how to best resolve that conflict. Having been fully advised, the Court agreed with Defendants that it should bifurcate the case. Thus, Plaintiff's Construction Lien claim and Defendant's

Counterclaims proceeded as a trial to the Court. *If not otherwise resolved, the parties['] remaining claims would be tried to a jury at a later date."*

(Emphasis added.) The judgment also provided:

"In addition to all findings related on the record, the Court found, by a preponderance of the evidence, that

"1.  Plaintiff's Construction Lien was overstated and thus is invalid as a matter of law. As such, Defendant Springville is the Prevailing Party on that claim and is entitled to an Award of Attorney Fees and Costs to be determined by ORCP 68.

"2.  As to Defendant Springville's Claim of Breach of Contract, Defendant is entitled to a Judgment against Plaintiff and a Money Award in the amount of $346,872.22. Prevailing Party Status has not yet been determined on this claim.

"3.  The Court finds Defendant's Claims for Negligence, including Negligence *per se* are inapplicable to the subject case. Specifically, the Court finds that, as a matter of law, a remedy in Tort is not available."

Springville collected the amount awarded on its breach-of-contract counterclaim, plus interest, and filed a satisfaction of the money award.

After the trial court entered the limited judgment, Springville's trial counsel retained Stoel Rives for advice on whether to file a notice of appeal from the limited judgment. Stoel Rives advised Springville that the limited judgment was not an appealable judgment and, therefore, Springville did not need to file a notice of appeal. Several months later, Interstate moved to voluntarily dismiss its remaining claims for breach of contract and *quantum meruit* and objected to Springville's request for a jury trial on its counterclaims. Interstate contended that, under the limited judgment, the parties' only "remaining claims" that were "not otherwise resolved" by the court trial were Interstate's breach-of-contract and *quantum meruit* claims and, therefore, Springville was not entitled to a second trial on its counterclaims. The trial court agreed with Interstate, concluding that Springville's counterclaims were resolved

by the limited judgment and that Springville had no further claims outstanding. Accordingly, the court entered a general judgment of dismissal and a supplemental judgment awarding attorney fees.

Stoel Rives, on behalf of Springville, filed a single notice of appeal of all three judgments—that is, the limited judgment, the general judgment, and the supplemental judgment. The Supreme Court ultimately determined that, because "the limited judgment finally resolved all three of the claims that it addressed"—specifically, Interstate's lien claim and Springville's breach-of-contract and negligence counterclaims—and Springville had not timely appealed the limited judgment, Interstate's motion to dismiss the appeal as to those claims should have been granted. *Interstate Roofing, Inc.*, 347 Or at 163.

## B. *The Legal Malpractice Case*

Springville subsequently filed this legal malpractice action against Stoel Rives based on Stoel Rives's erroneous legal advice about the appealability of the limited judgment in the underlying case. Stoel Rives conceded that it should have advised Springville to timely file and serve a notice of appeal of the limited judgment, but moved for summary judgment on the ground that Springville could not establish "the critical element of causation" because a timely appeal would not have been successful.

In opposition to the motion, Springville responded that

"[t]here were three reasons the limited judgment would have been reversed and the case remanded for a new trial on Springville's counterclaims. The trial court denied Springville the right to trial by jury; the trial court erred in deciding as a matter of law that Springville could not sue Interstate for negligence; and, even if there had been a jury waiver, the trial court failed to award full damages on Springville's contract counterclaim."

The trial court entered an order granting summary judgment in favor of Stoel Rives, stating, in part:

"The court finds as a matter of law that in the underlying case * * *, [Springville] waived its right to a jury trial by

conduct and that to the extent the trial court's dismissal of [Springville's] negligence claim was error, such error was harmless. The court further finds that as to [Springville's] breach of contract claim in the underlying case, there was evidence in the record to support the trial court's award of damages to [Springville] on that claim."[7]

Springville appeals the resulting general judgment of dismissal.

## II. ANALYSIS

The elements of a claim for legal malpractice are essentially the same as for an ordinary negligence claim, and the plaintiff bears the burden of pleading and proving the facts necessary to establish those elements. *See, e.g., Harding v. Bell*, 265 Or 202, 204, 508 P2d 216 (1973). That is, a plaintiff who alleges legal malpractice must prove "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, *i.e.,* a causal link between the breach of duty and the harm." *Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993) (emphasis omitted).

As noted, the disputed element on summary judgment in this case is causation. To establish that element in a legal malpractice action, the plaintiff must show that the plaintiff "would have obtained a more favorable result in the earlier action if the attorney had not been negligent." *Jeffries v. Mills*, 165 Or App 103, 122, 995 P2d 1180 (2000); *see also Hoekstre v. Golden B. Products*, 77 Or App 104, 106, 712 P2d 149 (1985), *rev den*, 300 Or 563 (1986) ("When a defendant attorney is negligent in the conduct of an appeal, the plaintiff in the malpractice case must prove that the result of the appeal would likely have been favorable in order to prove that the defendant's negligence caused the plaintiff's damages."). In *Jeffries*, we explained:

---

[7] With regard to the harmlessness of the underlying court's dismissal of Springville's negligence claim, the trial court orally explained:

"I find it was harmless error because the damages were identical [in the breach-of-contract and negligence counterclaims], * * * the allegations were the same, the proof was the same, no evidence was excluded because the Court wasn't considering the negligence issue."

"When the 'more favorable result' depends on how a fact-finder would have resolved the case but for the attorney's negligence, causation is a factual issue in the malpractice case. *When, however, the attorney's alleged negligence involved the handling of a legal matter decided by the court, causation is to be resolved as a legal question. [Chocktoot v. Smith*, 280 Or 567, 571-73, 571 P2d 1255 (1977)]."

*Jeffries*, 165 Or App at 122 (emphasis added).

In this case, as the parties acknowledge, because the alleged attorney negligence involves the failure to timely prosecute an appeal, it presents a legal question. *Chocktoot*, 280 Or at 573 ("The legal consequences of an attorney's failure, in the earlier case, to present a timely pleading or motion or to take an appeal are matters for argument, not proof."); *id.* at 575 ("The question what decision should have followed in the earlier case if the defendant attorneys had taken proper legal steps is a question of law for the court."); *Stafford v. Garrett*, 46 Or App 781, 786, 613 P2d 99 (1980) ("Whether or not the plaintiff would have prevailed on appeal is a question of law."). Specifically, the trial court was required to decide as a matter of law how an appellate court would have ruled on the merits of an appeal of the limited judgment absent Stoel Rives's negligence—that is, had a timely appeal been filed.

As discussed above, the trial court resolved that question on summary judgment, concluding that Springville had failed to establish that it would have prevailed in an appeal of the limited judgment on any of the three grounds that it asserted and, consequently, that Stoel Rives was entitled to judgment as a matter of law. On appeal, we review that ruling according to the standard set out in *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997) (construing ORCP 47 C)—that is, we review the summary judgment record in the light most favorable to Springville, the nonmoving party, to determine if a genuine issue of material fact exists and if Stoel Rives is entitled to judgment as matter of law. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary

judgment." ORCP 47 C. "[T]he party opposing summary judgment has the burden of producing evidence on any issue 'raised in the motion' as to which the adverse party would have the burden of persuasion at trial." *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014) (quoting ORCP 47 C).

A. *Right to Jury Trial*

We begin with Springville's assertion that it would have obtained a reversal of the limited judgment in the underlying case based on the underlying trial court's "denial of Springville's right to a jury trial" on its counterclaims. The trial court rejected that argument, concluding that Springville had "waived its right to a jury trial by [its] conduct." Springville contends that the court erred because Springville had insisted throughout the underlying proceedings that it was entitled to a jury trial on its counterclaims in a second, bifurcated trial, and, therefore, it did not waive its jury-trial rights.

Whatever the merits of that argument, we perceive a more fundamental problem with Springville's ability to establish causation on that ground. As discussed above, Springville must show that it would have prevailed on appeal but for the negligence of Stoel Rives. Springville has failed to do that because it has not identified a ruling by the underlying trial court that it could have successfully challenged in a timely appeal of the limited judgment. *See Magno-Humphries, Inc. v. Apex Label & Systems, Inc.*, 269 Or App 561, 566, 344 P3d 1139, *rev den*, 358 Or 145 (2015) (issue not properly presented for appellate review where plaintiff did not identify court rulings that would have raised issue that plaintiff sought to have decided on appeal); *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or App 444, 464, 61 P3d 257 (2002), *rev den*, 335 Or 479 (2003) ("If a party does not identify a specific legal, procedural, factual, or other ruling by the trial court, ORAP 5.45(3), there is nothing for [the appellate] court to review."); ORAP 5.45(3) (appellant must "identify precisely the legal, procedural, factual, or other ruling that is being challenged").[8]

---

[8] Moreover, an appellant must demonstrate that the issue that it seeks to have resolved on appeal was timely and properly preserved in the lower court, by

Here, Springville has not identified, either below or on appeal, a ruling of the trial court that, if challenged, would have properly raised the jury-trial issue in an appeal of the limited judgment. Rather, before the trial court, Springville broadly asserted that the limited judgment in the underlying case would have been reversed and remanded because the trial court in the underlying case had "denied Springville the right to trial by jury"; on appeal, Springville simply defends that argument. Nowhere does Springville identify the ruling of the trial court in which it was denied that right. Instead, Springville asserts, vaguely, that "[t]he underlying court's *erroneous conclusion* that Springville waived its right to a jury trial would have required reversal in a timely filed appeal" (emphasis added; boldface omitted), but does not identify *any* trial court ruling that reflects that "erroneous conclusion." And, according to Springville, that conclusion is *not* embodied in the limited judgment itself; in its brief on appeal, Springville contends that the limited judgment actually *preserved* Springville's right to a jury trial on its counterclaims.

As far as we can imagine from Springville's argument, there are three possible rulings of the trial court that Springville might have sought to challenge on appeal in the underlying case; however, none of those would have led to a reversal of the limited judgment.

First, Springville might have challenged the court's decision to bifurcate the trial. However, Springville indisputably invited any error in that regard. *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (under doctrine of invited error, "a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it" (internal quotation marks omitted)). Second, Springville might have assigned error to the limited judgment as being inconsistent with the court's earlier ruling on bifurcation. However, Springville did not preserve that claim of error and, indeed, as noted, apparently concedes

---

identifying the stage in the proceedings when the issue was raised in the lower court, the method or manner of raising it, and the way in which it was resolved by the lower court. ORAP 5.45(4)(a)(i).

on appeal that the judgment was *not* inconsistent in that regard. Finally, Springville might have pointed to the trial court's entry of judgment on Springville's breach-of-contract and negligence counterclaims as the ruling that it wished to challenge on appeal; however, as our recitation of the record demonstrates, Springville *asked* the court to enter judgment on those claims.

We acknowledge that the difficulty arises, in part, because of the way in which the underlying case was litigated—in particular, the trial court in the underlying case did not *explicitly* rule that Springville was *not* entitled to a second, jury trial on its counterclaims until *after* the limited judgment was entered. *See* 276 Or App at 734-35. However, to the extent that Springville is now contending that the limited judgment had the *effect* of extinguishing Springville's jury-trial right, again, Springville seems to have invited any error in that regard. Springville asked the underlying court to rule on its counterclaims; that Springville did so based on an erroneous understanding that it would nonetheless also get a jury trial on those claims does not mean that Springville did not invite the error about which Springville complains.

In sum, Springville has not identified a ruling of the underlying trial court that would have resulted in reversal of the limited judgment on appeal on the ground that Springville was erroneously denied a jury trial on its counterclaims. Accordingly, the trial court in this case did not err in concluding that Springville had failed to demonstrate a genuine issue of material fact as to the causation element of its claim—an issue raised by Stoel Rives's motion for summary judgment for which Springville bore the burden of persuasion at trial—on the theory that the underlying trial court had "denied Springville the right to trial by jury."

B. *Breach-of-Contract Counterclaim*

Springville also claims that the underlying trial court erred in failing to award full damages on Springville's contract counterclaim, and an appellate court would have reversed the limited judgment on that basis. As noted, the limited judgment awarded Springville $346,872.22 on its breach-of-contract counterclaim; Springville contends that

its full compensatory damages were "in excess of $1,000,000." Pointing to the trial court's oral comments that, "had the lien been not invalidated, I would have made that more," Springville contends that the court erred because it based its award of damages on a legally erroneous premise—that it could reduce Springville's contract damages based on its invalidation of Interstate's construction lien. In other words, Springville contends that summary judgment for Stoel Rives was improper because Springville would have prevailed in a timely filed appeal of the limited judgment on the ground that the underlying trial court had erred in awarding only partial damages on Springville's contract counterclaim based on legally erroneous reasoning.

As it did below, Stoel Rives presents two arguments in response. First, Stoel Rives contends that, as the trial court correctly concluded on summary judgment, the underlying court's award of damages was supported by evidence in the record and, therefore, not subject to reversal on appeal. *See Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 619, 37 P3d 233 (2002) ("We will affirm a trial court's decision on compensatory damages if any evidence supports it."). Second, Stoel Rives contends that Springville failed to preserve its claim of error in the underlying case, and an appeal would have failed for that reason. As explained below, we agree with Stoel Rives that Springville's argument fails for lack of preservation.

As touched on earlier, 276 Or App at 738 n 8, to obtain appellate review of a trial court's ruling, the appellant generally must demonstrate that the issue presented on appeal was raised and preserved in the lower court.[9] *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000); ORAP 5.45(1). The appellant must also "specify the stage in the proceedings when the question or issue presented by the assignment of error was raised in the lower court, the method or manner of raising it, and the way in which it was resolved or passed on by the lower court." ORAP 5.45(4)(a)(i). The policies underlying the preservation requirement are well

___

[9] There is one exception to that rule: Under ORAP 5.45(1), an appellate court may, in its discretion, consider error that is plain—that is "an error apparent on the record, about which there is no reasonable dispute." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008).

known: judicial efficiency and fairness. *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) ("[T]he rule of preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. The rule also ensures fairness to opposing parties, by requiring that the positions of the parties are presented clearly to the initial tribunal so that parties are not taken by surprise, misled, or denied opportunities to meet an argument." (Internal quotation marks and citations omitted.)).

Here, Springville does not address the threshold issue of preservation at all. That is, Springville does not explain why, in an appeal of the limited judgment, the appellate court would not have rejected on preservation grounds Springville's challenge to the underlying trial court's determination of contract damages.

Nor can we envision such a scenario. The error (if any) that Springville now identifies was made when the trial court in the underlying case issued its oral ruling—that is, before judgment was entered—and Springville did not object. The court stated that it was going to "order damages in the amount of * * * [$]346,872.22. And had the lien been not invalidated, I would have made that more." Thus, Springville had an opportunity to challenge the court's reasoning at that time, and it did not do that. Accordingly, it failed to preserve the error.[10] *See Northwest Country Place*

---

[10] As a practical matter, we acknowledge that Springville likely did not think it necessary to object because it understood that it would get a retrial of that claim before a jury—that is, a second "bite at the apple." We can conceive of no principle by which the fact that Springville was incorrect about that future event would excuse its failure to preserve the error in the limited judgment. Nor has Springville provided one. Indeed, it may have been a strategic choice by Springville's lawyer not to object to the court's alleged error. For that reason, plain error review of the alleged error also was not available. *See, e.g., State v. Salas-Juarez*, 264 Or App 57, 64, 329 P3d 805, *rev den*, 356 Or 575 (2014) ("An error does not qualify as plain error if the record contains a competing inference that the party may have had a strategic purpose for not objecting.").

Moreover, it appears that the trial court sought to accomplish by its ruling the result that Springville's lawyer had suggested could result from the court's decision on the lien claim, *viz.*, a conclusion to the litigation. *See* 276 Or App at 728-29. As the court implied in its oral ruling, its invalidation of the lien did not mean that Interstate was not entitled to be paid for its work, only that it was not

*v. NCS Healthcare of Oregon,* 201 Or App 448, 458, 119 P3d 272 (2005) ("Failure to timely object results in nonpreservation of the alleged error."); *McDougal v. Griffith,* 156 Or App 83, 87-88, 964 P2d 1135 (1998), *rev den,* 328 Or 330 (1999) (where trial court's letter opinion indicated that court intended to award damages in excess of the prayer, in violation of ORCP 67 C(2), and appellant raised no objection before entry of judgment, error was not preserved). Thus, had Springville raised such a challenge to the trial court's award of damages in a timely filed appeal of the limited judgment, the challenge would properly have been rejected for lack of preservation. It follows that Springville failed to establish causation with respect to the underlying court's award of contract damages.

C. *Negligence Counterclaims*

Springville's third proffered theory of causation is that the limited judgment would have been reversed on appeal based on the underlying court's error in deciding as a matter of law that Springville could not sue Interstate for negligence. As recited earlier, the limited judgment stated in that regard:

> "[T]he Court finds Defendant's Claims for Negligence, including Negligence *per se* are inapplicable to the subject case. *Specifically, the Court finds that, as a matter of law, a remedy in Tort is not available.*"

(Emphasis added.)[11] Springville contends that that ruling was error under *Harris v. Suniga,* 209 Or App 410, 421-23, 149 P3d 224 (2006), *aff'd,* 344 Or 301, 180 P3d 12 (2008), which established that property owners may assert negligence claims against contractors for property damage and are not precluded from doing that by the economic-loss doctrine. Moreover, citing *Abraham v. T. Henry Construction, Inc.,* 350

---

entitled to foreclose its lien because it had overstated it. Although Interstate had not sought relief on its contract and *quantum meruit* claims in the court-tried portion of the case, it nonetheless intended to seek that relief in the ensuing jury trial. In light of that, the court appears to have signaled that it had reached a net award that reflected its judgment on the merits of all the claims, thereby producing a judgment that the parties could accept as a reasonable approximation of the result that would be reached if the parties' claims were tried to a jury.

[11] As recited above, 276 Or App at 732-33, the court's oral remarks reflect the same reasoning.

Or 29, 249 P3d 534 (2011), Springville points out that "[t]he Supreme Court subsequently confirmed that a property owner may sue in both tort *and* contract for property damage." (Emphasis in original.) Thus, in Springville's view, it was reversible error for the underlying court to dismiss Springville's negligence counterclaim.

In response, Stoel Rives contends, among other things, that the trial court correctly concluded that, even if the underlying court erred in ruling against Springville on its negligence counterclaim, the error was harmless, and thus would not have resulted in reversal of the limited judgment on appeal. We agree with Stoel Rives that any error in that regard was harmless.

"No judgment shall be reversed or modified except for error substantially affecting the rights of a party." ORS 19.415(2). "[T]o require reversal under the statute, an error must—in an important or essential manner—have materially or detrimentally influenced a party's rights; it is insufficient to speculate that the error might have changed the outcome in the case." *Purdy v. Deere and Company*, 355 Or 204, 225, 324 P3d 455 (2014). Moreover, the party asserting the error has the burden "to demonstrate that the error had the required prejudicial effect." *Id.* Springville failed to do that here.

As Stoel Rives points out (and the trial court agreed), "both as pleaded and as presented to the trial court, Springville's negligence and breach of contract counterclaims were indistinguishable." Springville's operative pleading asserted exactly the same underlying facts, allegations, and specifications in support of its breach-of-contract counterclaim as in support of its negligence counterclaim. It also sought awards of identical sums of damages with respect to each counterclaim. Springville's right to recover on both counterclaims was based on the same general collective testimony, evidence, and argument, as was its claim for monetary damages. Moreover, the court did not rule that a tort remedy was not available to Springville until after considering all of that testimony, evidence, and argument. That is, it did not exclude any evidence at trial based on its decision to dismiss Springville's negligence claim.

Springville contends nonetheless that the error was not harmless because Springville's negligence counterclaim was based on "Interstate's failure to comply with applicable building codes" and "[c]ompliance with building codes is separate and independent from the requirements of the contract." However, one of the allegations of breach asserted in Springville's breach-of-contract counterclaim alleged that "Interstate failed to comply with applicable laws, building codes, and failed to comply with the standard of care that applies to reasonable and competent contractors." Springville repeated and realleged that allegation in its negligence counterclaim. Thus, the two theories were not separate and independent.

Indeed, in closing argument, Springville expressly acknowledged that it made no difference which legal theory the underlying court relied on; it could simply make an award of damages without regard to whether it was based on Springville's negligence or breach-of-contract counterclaims:

> "Springville is entitled to have you find in [its] favor on the counterclaim on liability based on negligence per se[,] based on common law negligence[,] and based on breach of contract. And, of course, we've briefed that economic loss doctrine issue. * * *
>
> "But the point being that it's not—I don't know that it's absolutely necessary for you to reach—to decide that. *Because what you can do is just decide in favor of Springville without specifying what legal theory you're using.* I think that's a perfectly acceptable way to do it."

(Emphasis added.)

In short, we agree with the trial court that any error in the underlying trial court's dismissal of Springville's negligence counterclaim was harmless "because the damages were identical, * * * the allegations were the same, the proof was the same, [and] no evidence was excluded because the Court wasn't considering the negligence issue." Accordingly, the error would not have resulted in reversal of the limited judgment on appeal, and Springville's final theory as to causation thus fails.

## III.  CONCLUSION

In summary, the trial court correctly concluded that there was no merit to an appeal of the limited judgment in the underlying case on any of the three grounds asserted by Springville. Accordingly, the trial court did not err in granting summary judgment to Stoel Rives.

Affirmed.