Argued and submitted November 18, 2014, affirmed May 11, 2016

Bryan KERR
and Kerwin Kerr,
*Plaintiffs-Appellants,*

*v.*

Donald R. BAUER,
Trustee of The Kerr Homestead Trust,
*Defendant-Respondent,*

*and*

J. M. KERR,
Trustee of The Kerr Homestead Trust,
*Defendant-Appellant,*

*and*

Kerwin D. KERR, Sr., Deceased,
*Defendant below.*

Yamhill County Circuit Court
CV030231; A153944

373 P3d 1263

Thomas H. Anderson argued the cause for appellants. With him on the joint briefs were Thomas H. Anderson, P.C., Joseph A. Yazbeck, and Yazbeck Cloran & Bowser, P.C.

Thomas C. Tankersley argued the cause for respondent. With him on the brief were Joseph M. Strunk and Tankersley, Wright & Strunk, LLC.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## SERCOMBE, P. J.

In 1956, Sylva Kerr deeded property in trust to two of her children for the benefit of all of her descendents. That deed was inconsistent with the common-law rule against perpetuities. The trustees attempted to reconvey the property to Kerr by deed. Kerr then deeded the property outright to three of her children. The property was later conveyed to a family trust. Three of Kerr's descendents brought suit to cancel the later deeds and quiet title to the property in the original trustees. The trial court granted that relief and modified the 1956 deed to correct the rule against perpetuities violation. In *Kerr v. Bauer*, 232 Or App 374, 222 P3d 1117 (2009), *rev den*, 348 Or 414 (2010) (*Kerr I*), we concluded that the trial court erred in reforming the 1956 deed in the manner that it did. On remand, on cross-motions for summary judgment, the trial court concluded that the 1956 deed was void and that the later deed from Kerr to her children was valid. On appeal, we agree with the court's determinations about the legal effect of the deeds, and we affirm its rulings on the cross-motions for summary judgment.

We restate the underlying facts from *Kerr I*:

"The land at issue was once owned by Sylva Kerr. Sylva had eight children, including Marjorie Kerr Bauer (Marjorie); Kerwin D. Kerr, Senior (Senior); and J.M. Kerr (J. M.). The parties to this action include three of Sylva's grandchildren: plaintiff Bryan Kerr, who is J. M.'s son; plaintiff Kerwin Kerr II (Junior), who is Senior's son; and defendant Donald Bauer, who is Marjorie's son. J. M. is also a defendant.

"* * * The property at issue, according to Bryan, 'was the homestead of my grandparents, the childhood home of their children, a 40-acre retreat in the Coast Range, and through several generations has been a special and unique place of rest and recreation for their descendents.' Donald similarly refers to annual family reunions held on the property for 35 years, as well as other family recreational activities.

"In 1956, Sylva executed a warranty deed (Deed #1) transferring the property to her sons Senior and J. M., in trust. Deed #1 identifies Sylva as the 'widow of Henry Allen Kerr, deceased,' and provides, in part:

"'This grant is made for the purpose of creating a place of rest, recreation and recuperation for each and all of the children, grandchildren and descendants of Sylva Leona Kerr and Henry Allen Kerr, including the grantees specifically named herein, to hold in trust as herein designated, grantees to pay all taxes and care for the property.'

"After Sylva executed Deed #1, attorneys told J. M. and Marjorie that it violated the rule against perpetuities. In 1968, Senior and J. M., as trustees, executed a deed (Deed #2) conveying the property back to Sylva. Deed #2 provides that the conveyance was made 'for the reason that the trust created by [Deed #1] is invalid in that it violates the rule against perpetuities and in order that said grantee may reconvey said premises to the grantee's children, [Senior, J. M., and Marjorie], as tenants in common, for their use and benefit.' Two days later, Sylva executed a bargain and sale deed (Deed #3) conveying the property to Senior, J. M., and Marjorie.

"In 1989, Senior executed a bargain and sale deed (Deed #3.5) conveying his interest in the property to Marjorie and J. M. Later that year, Marjorie and J. M. executed a bargain and sale deed (Deed #4) that conveyed the property to the Kerr Homestead Trust. Marjorie and J. M. also executed a trust agreement for the Kerr Homestead Trust."

232 Or App at 377-78 (brackets in original; footnote omitted).

As noted, the trial court in *Kerr I* "'quiet[ed] title in the trustees pursuant to the 1956 deed (Deed #1) and order[ed] all subsequent deeds of the real property cancelled.'" *Id.* at 379. In a letter opinion, the trial court had acknowledged that Deed #1 violated the common-law rule against perpetuities but held that the interests of the grandchildren and descendents could be severed from the interests of the children, so as to change the deed to cure the rule against perpetuities defect. The trial court also concluded that the trustees under Deed #1 did not have the power to convey the property to Sylva in Deed #2, and, therefore, all deeds that followed that conveyance were void as a matter of law. The trial court subsequently entered a judgment to that effect.

On appeal from that judgment, Donald argued that severance was improper and Deed #1 was therefore void. *Id.* at 380. In *Kerr I*, we concluded that the rule against perpetuities violation could not be cured by severance. We explained that the doctrine of severance can be applied only when "severing invalid provisions from the remainder of the trust" would not be "contrary to the settlor's purpose of plan" and interpreted Deed #1 to "evidence[] Sylva's intent to benefit her children, grandchildren, and descendents by preserving the property as a place of rest and recreation for all of them equally, with no end date and no provision for the final disposition of the property to any individual." *Id.* at 381-83. Thus, Deed #1 was "one entire scheme from which interests cannot be severed without defeating Sylva's manifest purpose to benefit 'each and all' of the beneficiaries." *Id.* at 383. Accordingly, we reversed and remanded the trial court's decision.

In *Kerr I*, we noted, but did not resolve, one of Donald's alternative arguments, which is relevant to this appeal. After the trial court had entered an order granting plaintiffs' motion for summary judgment and directing entry of a judgment cancelling Deeds #2 to #4 and quieting title in J.M. Kerr (J.M.) and Senior, Donald petitioned the court to reform Deed #1 under ORS 105.970(2).[1] Donald argued that the court could better preserve Sylva's intent by modifying the deed to include a savings clause and additional trustees.[2] Bryan, Junior, and J.M. responded that,

---

[1] ORS 105.970(2) provides:

"If a nonvested property interest or a power of appointment was created before January 1, 1990, and is determined in a judicial proceeding, commenced on or after January 1, 1990, to violate this state's rule against perpetuities as that rule existed before January 1, 1990, a court upon the petition of an interested person may reform the disposition in the manner that most closely approximates the transferor's manifested plan of distribution and is within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created."

[2] Donald explained that severing all but the interests of the children would result in the trust terminating at the death of Sylva's last surviving child, and J.M.—the youngest of her surviving children—was 82 years old, so the trust would not last very long under the trial court's ruling. He also asserted that it would better carry out Sylva's intent if the savings clause also altered the method for distributing trust property upon its termination because, as matters stood, the remainder would be distributed to the estate of the last beneficiary upon his death.

since the only remaining interest in the trust was that of the children, Donald was no longer an "interested person" who was qualified to seek reformation. *See* ORS 105.970(2) (providing that a court "may reform" a disposition to conform to the rule against perpetuities "upon the petition of an interested person"). The parties reiterated those arguments on appeal, but we stated that "[o]ur disposition on Donald's assignment of error obviate[d] any need to address" them. *Kerr I*, 232 Or App at 383.

On remand, Bryan and Junior again moved for summary judgment on their claim to cancel Deeds #2 to #4 and quiet title in J.M. and Senior. Donald also moved for summary judgment on that claim. Along with the merits of plaintiffs' claim, the parties disputed whether the decision in *Kerr I* limited the issues remaining for the trial court to decide on remand.

Bryan and Junior—joined by J.M.—asserted that they were entitled to summary judgment for two reasons: First, *Kerr I* was premised on the fact that Deed #1 was valid and not void *ab initio* and implicitly foreclosed any assertion that it was not, and Deed #1 remained valid until a court declared it to be void. Therefore, Deed #1 should be enforced in some manner. Second, they argued that Deed #2, and all subsequent deeds, were void because the trustees had no authority to convey the property back to Sylva in Deed #2.

Bryan and Junior noted that our opinion was limited to the issue of whether severance was the proper way to reform Deed #1. They reasoned that the court took that approach because it had accepted the premise that Deed #1 could be reformed in some way—just not through severance—and the remand therefore came with implicit instructions mandating that the trial court reform Deed #1 under ORS 105.970(2). In support of that assertion, they pointed to the portions of *Kerr I*, discussed above, that mentioned Donald's request for reformation. They argued that the *Kerr I* court would not have bothered to discuss that argument—one of many that Donald raised on appeal that the court did not resolve—if the court had not intended to signal to the trial court that reformation was the appropriate resolution of the case.

For his part, Donald argued—in opposition to plaintiffs' motion for summary judgment and in support of his own motion for partial summary judgment—that the effect of our reversal was to wipe away all previous rulings by the trial court and start the case anew. Further, he contended that *Kerr I* implicitly held that Deed #1 was void because the rule against perpetuities violation could not be cured by severance. For that reason, he asserted that Deed #1 could not reformed under ORS 105.970(2). Donald further contended that, even if Deed #1 could be reformed under that statute, the trial court should decline to exercise its discretion to do so for a number of reasons. In particular, Donald relied on his own affidavit to support his argument that Marjorie, J.M., and Senior had acted to "save" the 1956 trust from the rule against perpetuities violation through the conveyances memorialized in Deeds #2 and #3. He further argued that reforming Deed #1 was unnecessary because the Kerr Homestead Trust sufficiently preserved Sylva's original intent, and all the parties in the case had benefited from that trust.

In opposition to Donald's motion for summary judgment, Bryan, Junior, and J.M. reiterated their contention that Deed #1 was not void and further avowed that neither Deeds #2 and #3, nor the Kerr Homestead Trust, furthered Sylva's original intent for creating the 1956 trust. Additionally, they asserted that Donald's affidavit created issues of material fact precluding summary judgment in Donald's favor, because, if believed, his testimony demonstrated that those conveyances were the result of a campaign by Marjorie to defraud Sylva and the beneficiaries of the 1956 trust in order to gain the property for herself.

After briefing and oral argument from the parties, the trial court granted Donald's motion for partial summary judgment, denied Bryan and Junior's motion for summary judgment, and entered a limited judgment to that effect.[3] The court explained its reasoning in a letter opinion. First, the court agreed with Donald that "the reversal by the court of appeals vacates" the entirety of the previous trial court decision and, "in essence, the parties start anew."

---

[3] The judgment did not resolve Donald's counterclaims and cross-claims.

Next, the court concluded that the rule against perpetuities violation had rendered Deed #1 void and explained that, because Deed #1 was void, "Deed [#]2 was meaningless." That document "did not exceed the power of the grantors of that deed or violate a fiduciary duty because the putative grantees of Deed [#]1 had no title to convey." Accordingly, the court concluded that the "clear inference the court can draw from the execution of Deed [#]2, with full knowledge and involvement of the original grantor, was that the original grantor was trying to correct the violation of the rule against perpetuities" and that Deed #2 had been made, "out of abundance of caution, to avoid a cloud on the chain of title to the property that would exist if the original grantor merely tore up the void Deed [#]1 and executed a new deed."

The trial court then discussed the effect of Deed #3, in which Sylva conveyed the property to Senior, J.M., and Marjorie as tenants in common. The court concluded that Deed #3 "was a re-issuance of title to the property in question, meant to delete the provision that violated the rule. It may have also changed the grantees, but that was the original grantor's decision to make and this court can only conclude that such was the intent of Sylva Kerr." The court further explained that

"[u]ltimately, the court should, where possible, support the intent of the grantor of a deed. There could be no clearer evidence that the grantor considered Deed [#]1 void (or had been so advised) and was free to express her intent in a new deed. The court can only conclude that she did so in Deed [#]3."

The court subsequently discussed the effect of ORS 105.970(2) and concluded that reforming the deed under that statute, under the circumstances of this case, would be contrary to the intent of the legislature:

"This court would likely come to a different conclusion if there was no Deed [#]3 and plaintiffs only sought to reform Deed [#]1. That *might* also be the case if Deed [#]3 were executed *after* the enactment of ORS 105.950 - 105.975, effective January 1, 1990. However, since Deed [#]1 was accepted as void and Deed [#]3 was executed pursuant to the clear intent of the original grantor *before* the statute

took effect, the statute could not go back and resurrect a deed the original grantor rightly treated as void and corrected.

"ORS 105.950 - 105.975 does contain language referring to deeds created before January 1, 1990. Even if applicable, I conclude that the statute was not intended to fix a problem that was already fixed by the parties, especially the original grantor, Sylva Kerr. Sylva Kerr fixed the problem by treating Deed [#]1 as void and executing a new deed, Deed [#]3.

"Accordingly, Deed [#]3 and subsequent deeds in the chain are valid and establish the current title to the property."

(Emphases in original.) The court alternatively held that, "[u]ltimately, even if presented with the option to reform Deed [#]1, the court would not exercise discretion to do so, on equitable grounds."

Bryan and Junior, again joined by J.M. (collectively, "appellants"), appeal from the resulting limited judgment. The parties largely reiterate the arguments they made in the trial court.[4] Appellants argue that they were entitled, as a matter of law, to an order cancelling Deeds #2, #3, #3.5, and #4 and quieting title in J.M. and Senior as trustees of the 1956 trust created by Deed #1. They also argue that the trial court had no authority to decline to reform Deed #1 under our decision in *Kerr I* and ORS 105.970(2). Donald responds that Deed #1 is void and that title to the property devolved through Deed #3. Therefore, he contends that he is entitled to judgment as a matter of law.

We first address the scope of our remand to the trial court in *Kerr I*. Appellants contend that we remanded the case to the trial court solely to allow the trial court to reform Deed #1 under ORS 105.970(2), and, thus, the trial court erred in declining to reform that deed. In response, Donald argues that reversing and remanding the case, without any

---

[4] Appellants' first, second, and fourth assignments of error complain about the substance of the court's summary judgment determinations and its failure to reform Deed #1 under ORS 105.970(2). Our disposition of those contentions obviates any need to address appellant's third assignment of error, which pertains to the court's rulings on various affirmative defenses raised by Donald.

specific instructions constraining the scope of the remand, started the case "anew." We agree with Donald. "Generally speaking, when our tagline specifies, *in toto*, 'Reversed and remanded,' the 'reversed' part of the tagline negates the appealed judgment or order and the 'remanded' part sends the case back to the lower tribunal as though the original proceeding did not occur." *Allen v. Premo,* 251 Or App 682, 686, 284 P3d 1199 (2012). That general principle may not hold "when something in the text of the opinion itself clearly indicates that the remand is partial," but there is nothing in the text of *Kerr I* to clearly indicate a partial remand. *Id.*

Appellants assert that references in the text of *Kerr I* to ORS 105.970(2) indicate that the purpose of the remand was to apply that statute and reform the deed. Appellants read too much into those allusions. In *Kerr I*, we expressly stated that our disposition on the issue of whether Deed #1 could be saved from the rule against perpetuities violation by severing the defective interests "obviate[ed] any need to address" the parties' arguments related to ORS 105.970(2). 232 Or App at 383. Thus, appellants are incorrect in arguing that *Kerr I* required the trial court to reform Deed #1 under that statute on remand. The opinion did not reach that issue.

Appellants' contention that ORS 105.970(2) *requires* the trial court to reform Deed #1 is inconsistent with the text, context, and legislative history of the statute. *See State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009) (when interpreting a statute, a court must attempt to discern the intent of the legislature by first considering the text and context of the statute and then by considering any relevant legislative history, assigning it any weight that the court deems appropriate). The legislature's intent to make reform pursuant to ORS 105.970(2) a discretionary decision is clear based on the text and context of the statute. *Compare* ORS 105.970(2) ("a court * * * may reform" an instrument created before January 1, 1990, that is determined in a judicial proceeding initiated after that date to violate the rule against perpetuities) *with* ORS 105.960 ("a court shall reform" an instrument created after January 1, 1990, that violates the rule against perpetuities). The legislative history of ORS 105.970(2) reinforces that understanding. *See Uniform*

*Statutory Rule Against Perpetuities* (USRAP) § 5 comment (1986) (explaining that section 5(b) of the uniform statutory rule, which the legislature adopted verbatim in promulgating ORS 105.970(2), "recognizes a court's authority to exercise its equitable power to reform instruments that contain a violation of the Common-law Rule Against Perpetuities");[5] Tape Recording, Senate Committee on Judiciary, SB 297, Jan 25, 1989, Tape 8, Side A (statement of Sarah L. Baker, member of the Oregon State Bar Association Estate Planning and Administrative Law section) (explaining that ORS 105.970(2) "authorizes but does not mandate that the court reform" an instrument created before January 1, 1990, that violates the rule against perpetuities). Thus, even if ORS 105.970(2) applies to this case, it did not compel the trial court to reform Deed #1.

As noted, the court declined to reform Deed #1 for two reasons. First, the court determined that ORS 105.970(2) did not authorize reformation of a deed that violates the rule against perpetuities when the property is subsequently reconveyed by the grantor. Alternatively, the court concluded that, even if it had the "option" to reform the deed, it "would not exercise discretion to do so, on equitable grounds." We express no opinion on whether the trial court was correct in concluding that it lacked authority to reform the deed under ORS 105.970(2). Assuming that it was so empowered, for purposes of this case, we readily conclude that the trial court did not abuse its discretion in failing to reform the deed.

We will not disturb a trial court's discretionary decision so long as the "trial court's decision was within the

---

[5] The legislature adopted the USRAP verbatim when it enacted ORS 105.950 to 105.975. The comments to the USRAP are therefore instructive in interpreting ORS 105.970(2) "because the legislature took note of them at the time" it adopted the statute. *Kelly v. Olinger Travel Homes, Inc.*, 200 Or App 635, 644 n 5, 117 P3d 282 (2005), *rev den*, 340 Or 308 (2006) (discussing the effect of the comments to the Uniform Commercial Code); *see also* Tape Recording, Senate Committee on Judiciary, SB 297, Jan 25, 1989, Tape 8, Side A (statement of Valerie Vollmar, Chair of the Oregon State Bar Association Estate Planning and Administrative Law Section) (explaining that "there are extensive comments [to the USRAP] that we would essentially bootstrap into our law" in response to Senator Shoemaker's question about whether the comments to the uniform rule "would have the same effect as the comments to the" Uniform Commercial Code).

range of legally correct discretionary choices and produced a permissible, legally correct outcome." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). As we understand the trial court's ruling, it declined to exercise its discretion for the same reasons that it concluded it could not reform the deed—because the rule against perpetuities problem was "fixed" long before plaintiffs brought suit through the following actions: First, J.M. and Senior created Deed #2 in order to clear the title to the property. Then, Sylva conveyed the property to Marjorie, J.M., and Senior through Deed #3, which ensured that the property would be transferred to her children.

Appellants contend that those actions were invalid. According to appellants, no deed can be void for violating the rule against perpetuities unless it is determined to be void by a court, and, until a court voids a deed, it is effective. Thus, on appellants' reasoning, Deed #1 was valid and effective to pass title to the property to the trustees that it names. Appellants further assert that Deed #2 was void (and ineffective to convey title through the subsequent deeds) because the trustees lacked authority to convey the property under the terms of the trust created by Deed #1. *See McKinnon v. Bradley*, 178 Or 45, 52, 165 P2d 286 (1946) (explaining that a trustee has no power to convey trust property, unless provided by "legal decree or by the terms of the trust" (internal quotation marks omitted)). Donald rejoins that Deed #1 was void *ab initio* and, therefore, Deed #3 was valid because Sylva retained title to the property until she conveyed it through Deed #3. We agree with Donald.

At the time Deed #1 was made, prior to the enactment of the USRAP, the law was clear: An instrument that violated the rule against perpetuities was void *ab initio* and could not pass title to the property at issue. *See Closset et al. v. Burtchaell et al.*, 112 Or 585, 619, 230 P 554 (1924) (where a trust violates the rule against perpetuities "the trust *res* does not pass to the trustees because of the invalid provisions of the will, but passes to the heirs of the testator just as it would have done if he had died intestate, the entire scheme of the testator must fail because there is nothing left for the trust to operate upon"); *City of Klamath Falls v. Flitcraft*, 7 Or App 330, 336, 490 P2d 515 (1971), *rev den*

(1972) (a deed violating the rule against perpetuities is void *ab initio*).[6] Prior to the USRAP, an instrument that violated the rule was void unless the invalid interests could be severed from the valid interests, and, as we held in *Kerr I*, that severance could not be made in Deed #1. *See Kerr I*, 232 Or App at 383 ("Deed #1 is one entire scheme from which interests cannot be severed without defeating Sylva's manifest purpose to benefit 'each and all' of the beneficiaries."); *id.* at 381 ("'If a provision in the terms of the trust is illegal, the trust fails altogether if, but only if, the illegal provision cannot be separated from the other provisions without defeating the purpose of the settlor in creating the trust.'" (Quoting *Restatement (Second) of Trusts* § 65 (1959).)). Thus, the conveyance to the trustees in Deed #1 failed altogether.

Since Deed #1 was void and did not create a trust, Sylva retained title to the property. The trial court was therefore correct that Deed #2 had no effect, because J.M. and Senior, the grantors in Deed #2, never received title to the property. Because Sylva retained title, she was free to convey the property to her children in Deed #3. It follows that the conveyances that followed, culminating in the creation of the Kerr Homestead Trust, were also valid.

Because Deed #3 was valid when made, even assuming that the subsequent enactment of ORS 105.970(2) empowered the court to reform Deed #1, it would not change the fact that Sylva disposed of her property through Deed #3. Consequently, a reformed Deed #1 could not revive the original trust or retroactively invalidate the conveyance of the property under the subsequent deeds. Rather, it would be a nullity, purporting to convey property that had already been

---

[6] The legislative history of ORS 105.970(2) shows that the legislature understood that effect of the common-law rule and that it sought to remedy the harsh consequences of initial invalidity by adopting the USRAP. *See USRAP* § 1 comment (1986) ("The Common-law Rule Against Perpetuities is a rule of *initial* validity or invalidity. At common law, a nonvested property interest is either valid or invalid *as of its creation*." (Emphases in original.)); Tape Recording, Senate Committee on Judiciary, SB 297, Jan 25, 1989, Tape 8, Side A (statement of Sarah L. Baker, member of the Oregon State Bar Association Estate Planning and Administrative Law section) (explaining that—under the state of the law in Oregon prior to the enactment of the USRAP—if a trust violated the common-law rule against perpetuities, it would "never come into existence," whereas, under the USRAP, a court would be able to "wait and see" whether an interest vested during the perpetuities period or reform an instrument to save it from invalidity).

transferred to the grantees in Deed #3. To put it another way, Sylva did not own the property after 1968, so reforming Deed #1 several decades later would have no effect. Under those circumstances, the trial court did not abuse its discretion in declining to reform the deed.

Appellants finally contend that the trial court's letter opinion contains disputable factual findings, and those issues of fact precluded the trial court from granting summary judgment in Donald's favor. *See* ORCP 47 C; *Springville Corp. v. Stoel Rives LLP*, 276 Or App 725, 737, 372 P3d 14 (2016) (summary judgment is precluded when, considering the evidence in the light most favorable to the nonmovant, there are disputed issues of material fact). Appellants assert that the trial court found in its letter opinion that Sylva believed that she was reviving or preserving the trust created in Deed #1 by conveying the property to J.M., Marjorie, and Senior in Deed #3 as a correction deed. Appellants argue that, because Deed #3 did not replicate the original trust but, instead, put the property in the personal ownership of the grantees, there is a factual dispute as to whether Sylva understood the effect of Deeds #2 and #3 and that that understanding is material to resolution of the case. With respect, appellants misread the trial court's letter opinion.

In its opinion, the trial court acknowledged that Deeds #2 and #3 did not replicate the original trust. Instead, the trial court stated that Deed #3 was a "re-issuance" of title to the property that "changed the grantees" from J.M. and Senior, as trustees, to J.M., Marjorie, and Senior as tenants in common. The court also found that Sylva intended for it to have that effect ("There could be no clearer evidence that the grantor considered Deed [#]1 void (or had been so advised) and was free to express her intent in a new deed. The court can only conclude that she did so in Deed [#]3."). Thus, the trial court found that Sylva intended to correct the rule against perpetuities problem by distributing her property in a different way than she had initially attempted in Deed #1. That finding is supported by Deed #2's statement that it was created "for the reason that the trust created by [Deed #1] is invalid in that it violates the rule against perpetuities and in order that said grantee may reconvey

said premises to the grantee's children, [Senior, J.M., and Marjorie], as tenants in common, for their use and benefit."

Moreover, appellants identify no evidence in the record to indicate that Sylva intended Deed #3 to do anything other than what it says on its face. Appellants argue that portions of Donald's affidavit create a factual dispute about whether Marjorie misled Sylva by representing to her that Deeds #2 and #3 would replicate the original trust. In particular, they highlight a statement, which Donald attributes to Marjorie and J.M., that "[t]he purpose * * * [of Deeds #2 and #3] was to carry out the intent of Deed #1. The idea was that the people to whom the deed was given would hold the property for purposes of the trust." Similarly, they point to Donald's testimony that Deeds #3 and #3.5 were also created to "preserve the intent of the trust." However, Donald did not testify that Marjorie or J.M. made those representations to Sylva, but rather that they did so to *him*. There is no evidence in the record about what, if anything, Marjorie and J.M. told Sylva about the effect of Deeds #2 and #3. Therefore, the trial court properly found that Deed #3 reflected Sylva's actual intent and that it should not be reformed or avoided to reflect a different intent. *See Hilterbrand v. Carter*, 175 Or App 335, 340, 27 P3d 1086 (2001) ("When a deed is recorded, there is a presumption that the grantor intended the deed to take effect and to pass title to the grantees."). Accordingly, taking the facts in the light most favorable to appellants, no disputed issues of material fact precluded summary judgment, and Donald was entitled to judgment as a matter of law.

In sum, we conclude that the trial court did not abuse its discretion in declining to reform Deed #1 and that no genuine issues of material fact precluded the grant of summary judgment in Donald's favor. Thus, the court did not err in granting Donald's motion for partial summary judgment or in denying plaintiffs' motion for summary judgment.

Affirmed.